WOODWORTH *v.* BANNING ET AL., EXRS.

(Decided April 30, 1928.)

*Messrs. Davies, Hoover & Beall,* for plaintiff in error.

*Mr. Wm. J. Rielly* and *Mr. Lester A. Jaffe,* for defendants in error.

CUSHING, J.   The court of common pleas sustained defendants' demurrer to the plaintiff's amended petition, and entered judgment.   This action is prosecuted to reverse that judgment.

The amended petition is as follows:

"Plaintiff is the sole heir at law of her mother, Anna Moore, deceased, who died on the 11th day of October, 1912.   Thomas Paxton, Jr., and Florence Price are the sole heirs at law of Thomas Paxton, deceased, who died on the 18th day of April, 1922.

"Defendants, Thomas Paxton, Jr., and Victor

Taylor Price, were the duly qualified and acting executors of the estate of Thomas Paxton, deceased.

"On or about March 14, 1906, Anna Moore was the owner in fee simple of the following described property: [Description of property.]

"For many years prior thereto, Thomas Paxton, who was an attorney at law, had been the professional advisor and confidant of said Anna Moore, who during the several years prior to March, 1906, had been a woman of considerable means, having real estate holdings in the western portion of the city of Cincinnati, amongst which was the property above described.

"Owing to financial reverses in the spring of 1906, suits were brought by the sheriff of Hamilton county to sell for taxes some of her properties including the property aforesaid. At said time, to wit, March 14, 1906, Anna Moore was indebted to Thomas Paxton, her attorney, to the extent of one thousand dollars ($1000.00).

"Said Anna Moore was financially unable at that particular time to purchase the above-described property with her own money at the sheriff's sale. It was therefore mutually agreed between Anna Moore and Thomas Paxton that Anna Moore would make no attempt to purchase said property with her own funds, but that Thomas Paxton would lend her sufficient money to buy said property at said sale and would take the legal title thereto in his own name in order to protect himself for said advances and for one thousand dollars ($1000.00) which she already owed him.

"It was further agreed that he would at all times hold himself in readiness to transfer said legal title

either to Anna Moore or to any one claiming under her whom she might designate upon payment to him of said one thousand dollars ($1000.00) plus whatever advances were necessary for the holding of said property.

"In accordance with their arrangement said Thomas Paxton did on March 14, 1906, purchase said property at said sheriff's sale and pay the taxes on said property, except from time to time when the same were paid either by Anna Moore or plaintiff herein, and did hold the legal title of said property in his own name, up to December 22, 1921, at which time he conveyed said legal title to defendant Leland G. Banning, as hereinafter set forth. Plaintiff says that during all of the years between the date of said sheriff's sale up to the time when the legal title of said property was conveyed to defendant Banning, she and her mother with full knowledge and consent of Thomas Paxton did exercise full dominion and authority over said property. That as between her and her mother on the one hand and the said Thomas Paxton on the other, said property was treated as the property of Anna Moore up to her death and thereafter as the property of this plaintiff. Paxton never made or asserted any claim against said property except to hold the legal title until plaintiff or her mother might be able to reimburse him for whatever expense he had encountered. He at all times held himself in readiness to give plaintiff or her mother a deed upon the payment to him of his said expense, and did on the 22nd day of September, 1921, acknowledge the status under which he held said property in writing in the following words and figures, to wit:

" 'September 22, 1921.

" 'Mrs. Mary A. Woodworth, 2934 Moorman Avenue, Walnut Hills, Cincinnati, Ohio—Dear Madam: I am willing to make a deed to the purchaser of the Mill Creek lot on payment to me of $3,422.68, which amount is arrived at as follows:

| | | |
|---|---|---|
| Total amount of taxes paid | $1,123 | 92 |
| Total amount of interest on taxes paid | 618 | 76 |
| Balance due on promissory note | 1,000 | 00 |
| Interest on promissory note after date of maturity | 180 | 00 |
| Purchase price | 500 | 00 |
| | $3,422 | 68 |

" 'Very truly yours,

" '[Signed]   Thomas B. Paxton.'

"Due to plaintiff's confidence in her attorney, Thomas Paxton, her reliance upon him and his constant willingness to give her a deed to said property, upon the payment of his said expenses, she let the title remain in his name until close to the end of his life in the full belief that her rights would be protected.

"Shortly prior to Thomas Paxton's death and after the death of Anna Moore, mother of the plaintiff herein, plaintiff in an effort to sell the above described property offered the same to the defendant herein, Leland G. Banning, then and there apprizing him of the full circumstances in connection with her interest and of the amount which was necessary for her to expend in clearing the legal title thereto.

"On December 22, 1921, shortly before said Thomas Paxton's death, and when he was in an enfeebled condition, and without plaintiff's knowledge

and without notice to her, and with full knowledge and notice of the facts as aforesaid, defendant Banning procured a deed for said property from said Thomas Paxton and now holds said property and claims full ownership in utter disregard of plaintiff's rights.

"Plaintiff says that she has no exact knowledge of the amount now due the defendants, Thomas Paxton, Jr., Florence Price, sole heirs at law of Thomas Paxton, deceased, and Thomas Paxton, Jr., and Victor Taylor Price, Executors of the Estate of Thomas Paxton, deceased, but hereby tenders and offers to pay to said defendants whatever amount may be shown to be due them upon an accounting. "Wherefore plaintiff prays that there may be an accounting between herself and the said defendants, Thomas Paxton, Jr., Florence Price and Thomas Paxton, Jr., and Victor Taylor Price, executors of the estate of Thomas Paxton, deceased; that upon payment of the balance due as shown by said accounting said defendants be compelled to give to this plaintiff a deed to said property; that the deed from said Thomas Paxton to Leland G. Banning be declared null and void and set aside; that she be declared to be the real owner of said property and that all other defendants herein be barred from any claims they may have or assert in said property and that her title therein be quieted; and that she be restored to all things which she may have lost by reason of said deed from Thomas Paxton to said Leland G. Banning and for all other and proper relief."

The facts admitted for the purpose of the demurrer are: That Paxton and Moore entered into an

oral contract, by the terms of which Paxton agreed to and did lend Moore money with which to purchase property that she owned, and which was being sold at sheriff's sale to pay delinquent taxes; that the title to said property was to be, and was, taken in Paxton's name, to be held by him to secure the payment of the money loaned and as security for the $1,000 she previously owed him; that after notifying Woodworth, Moore's heir, on September 22, 1921, that he would transfer the property to her, or whomsoever she might designate, upon the payment to him of $3,422.68, he on December 22, 1921, conveyed the fee to the property to the defendant Banning; and that Banning had previously been advised by Woodworth of the circumstances under which Paxton held the title to the property, and the amount that it would be necessary for her to expend to clear the title, and, after being so advised, Banning went to Paxton and procured a deed to said property from him, and now holds said property and claims full ownership, in utter disregard of plaintiff's rights.

Defendants in error claim that the allegations of the amended petition, that the conveyance from Paxton to Banning was, by design, an unlawful appropriation of plaintiff's property, with full knowledge of her interest in it, is a charge of fraud, and brings the case within the provisions of Section 11224, General Code. This would be true, if it were not conceded, for the purpose of the demurrer, that Paxton held the title to the property as security for a debt due and owing to him, and that so holding it, a trust was ingrafted on the title, and therefore he held the title as an equitable mortgage.

In the case of *Union Mutual Life Insurance Co.* v. *Slee,* 123 Ill., 57, at page 93, 13 N. E., 222, 228, the court said:

"When, therefore, the insurance company assumed to convey a fee to Averill, it only conveyed its interest as mortgagee, because Averill was charged with notice that it had no other interest to convey. The deed operated as an equitable assignment of the mortgage, and thereafter Averill, and the railroad company, for whom he purchased, held as mortgagee, just as the insurance company had done before its conveyance."

So that while the charge in the amended petition that the conveyance from Paxton to Banning was with knowledge on the part of both Paxton and Banning of Woodworth's interest in the property, and that Paxton held the title as security or as an equitable mortgage, in terms charges fraud, it in fact charges that Banning holds only the title that Paxton held, that of mortgagee.

In the case of *Link* v. *Hill, Admr.,* 117 Ohio St., 421, 159 N. E., 573; it was held, under the facts there stated, that the statute of limitations did not begin to run until there was a sale of the property. In the case at bar the sale was made December, 1921, but Woodworth received notice September 22, 1921, that Paxton would convey the property on the payment to him of the amount of money stated in the notice. And even assuming that this notice was a demand for payment of the money due, and holding, as we do, that the petition alleges that Paxton held the title as an equitable mortgage, it could not be said that the statute would begin to run prior to September 22, 1921. The amended petition stating

an action for equitable relief, it would come within Section 11227, General Code, and, the 10 years provided therein not having elapsed prior to the bringing of the action, the court of common pleas was in error in sustaining the demurrer to the amended petition.

The judgment will therefore be reversed, and the cause remanded to the court of common pleas for further proceedings.

*Judgment reversed and cause remanded.*

HAMILTON, P. J., and MILLS, J., concur.