David JENSEN; Rose Johnson; Tiffny Jensen; Sterling Group; De West Indies; Capital Ventures Development, Plaintiffs–Appellants,

v.

Thomas G. KIMBLE; Thomas Kimble, P.C.; Richard C. Mason; Richard C. Mason, Inc.; Nosam, Inc.; Trudy Reynolds; Naomi Mason; Nomco, Inc.; J.P. Michaels; Mike Reynolds; Russell K. Nielson; KDR, Inc.; Gary Ramsey, also known as Don L. Ramsey; Tammy Peters; Kristine Ramsey; Donnell Ramsey; Pauline Ramsey; George C. Ramsey; Nosam, Inc.; Nosam, Inc. II; Wallace S. Pidcock, Defendants–Appellees.

No. 91–4157.

United States Court of Appeals,
Tenth Circuit.

July 30, 1993.

Paul T. Moxley and Cynthia K.C. Meyer, Campbell Maack & Sessions, Salt Lake City, UT, for plaintiffs/appellants.

Richard Burbidge, Stephen B. Mitchell, and Gary Rhys Johnson, Burbidge & Mitchell, Salt Lake City, UT, for defendants/appellees.

Before EBEL, Circuit Judge, HOLLOWAY, Senior Circuit Judge, and COOK, Senior District Judge.[*]

EBEL, Circuit Judge.

This case requires us to determine whether the district court properly granted summary judgment dismissing the plaintiff's claims under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. The plaintiffs' complaint alleged that the defendants acquired the plaintiffs' stock on the basis of undisclosed material, inside information, and affirmative misstatements with regard to a pending merger. The record establishes that the defendants advised the plaintiffs prior to the stock transaction that the nondisclosed information would not be revealed. Hence, the defendants' failure to disclose this information was not deceptive. With regard to the alleged affirmative misstatements, the plaintiffs failed to come forward with any evidence that these statements were false. Thus, plaintiffs failed to carry their burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, we affirm.

## FACTS

This case arises out of the merger in November, 1986 of Herbalife International ("Herbalife"), a well-known private company engaged in the manufacture of health-related products, and Sage Court Ventures, Inc. ("Sage Court"), a public corporation organized and existing under the laws of the State of Nevada. The merger was prompted by Herbalife's desire to go public by merging into an existing public company that was a "clean shell." Defendant Thomas Kimble, an attorney specializing in securities transactions, and defendant Richard Mason, an experienced corporate promoter, assisted Herbalife in its search for a "clean shell" and ultimately introduced Herbalife to Sage Court. For his efforts in arranging the merger with Sage Court, Herbalife gave to Mason 250,000 shares of Herbalife stock as a finder's fee.

Five months prior to the merger, in June, 1986, plaintiff David Jensen, a sophisticated investor and experienced corporate promoter, purchased 4 million shares of Sage Court stock at a $200,000 blind pool public offering conducted by Sage Court. Jensen purchased the stock in part under his own name and in part under the name of the other party plaintiffs: his wife, Rose Johnson, his daughter, Tiffny Jensen, and several corporate entities over which he exercised control, Sterling Group, De West Indies, and Capital Ventures. Jensen's purchase constituted roughly 13% of Sage Court's outstanding stock.

---

[*] The Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

On the morning of October 29 or 30, 1986, Jensen was in California attending a conference when he received a telephone call from Kimble, who at this point was representing both Sage Court and Herbalife in their merger negotiations. Kimble had represented Jensen and his wife on several prior occasions with respect to various corporate matters. During their telephone conversation, Kimble informed Jensen that he was negotiating a prospective deal for Sage Court, and that he needed Jensen to sell 1,950,000 shares of the plaintiffs' Sage Court stock to a particular broker at $.03 per share and 1,050,000 shares to Kimble himself at $.02 per share. At the time, Sage Court stock was selling on the market at $.12 per share. Kimble told Jensen that these sales would bring into the deal some "very influential" people who "could potentially solidify a deal for Sage." Jensen asked Kimble to identify the people and the deal but Kimble refused. Nevertheless, Jensen assumed the deal consisted of a merger with an undisclosed company on some undisclosed terms. Kimble concluded the conversation by stating

> Look Dave, I'm basically looking at this deal. You don't know it, but you want this deal to go down. I want this deal to go down. This—you know—I'm kind of seeing the big picture. I know you don't understand, but I see the big picture and—you know—basically we have dealt on things in the past. I have worked with you. You have done things with me and have I ever screwed you?

In response, Jensen stated "let's do it." Depos. of D. Jensen at 127; Aplnt's App. at 260. Jensen testified that he agreed to the deal because the plaintiffs were getting a good return on the stock being sold,[1] and the sale still left them with a substantial number of shares upon which he hoped the plaintiffs would realize even greater profit after the deal was done.

On the afternoon of October 30, after Jensen initially agreed to sell three million shares of the plaintiffs' stock as requested by Kimble, a letter of intent was signed between Herbalife and Sage Court announcing their intention to merge. The letter of intent stated that the reorganization would be accomplished by means of a stock for stock exchange, to be followed at a later date by a public offering of the stock of the newly formed corporation. The letter of intent also provided that the merger would be subject to the approval of the shareholders of Sage Court. Immediately following Herbalife and Sage Court's approval of the letter of intent, a letter announcing this approval was distributed to the market makers, all the shareholders of Sage Court, and the SEC.

On the evening of October 30, Jensen received another phone call from Kimble. Kimble told Jensen that the sale of stock at $.03 had to take place the next day at 11:00 a.m. to the broker J.P. Michaels. In accordance with these instructions, Jensen telephoned his own broker on October 31 and directed the sale of 1,950,000 shares of the plaintiffs' Sage Court stock.[2] According to Jensen, it was not until he called his broker back an hour later to make sure the sale had gone through that he first heard the news about Herbalife's intent to merge with Sage Court. At this point, Sage Court stock was trading on the market around $1.50 per share. In their verified complaint, the plaintiffs allege that the recipients of the stock sold on October 31 were Mason and the other party defendants.[3]

Upon returning from California on November 3, Jensen went to Kimble's office with the remaining 1,050,000 shares of the plaintiffs' Sage Court stock requested by Kimble. During this encounter, Jensen asked Kimble if he thought the deal he was insisting upon from Jensen was fair. Kimble replied, "I'm a

---

1. Although Jensen knew the price offered him for three million shares of the plaintiffs' stock was considerably below the prevailing market price for Sage Court stock, he knew he could not sell three million shares on the market at the existing price because such a sale would drive the market price down.

2. The number of shares sold by each individual plaintiff were as follows: Jensen sold 400,000 shares, Rose Johnson sold 400,000 shares, Tiffny Jensen sold 400,000 shares, De West Indies sold 400,000 shares, and Sterling Group sold 350,000 shares.

3. These defendants consist of Mason's business associates and corporations controlled by Mason.

key figure in this deal and if I don't get the stock, it just may not happen." Kimble also stated, "Look, Dave, there is a lot to happen on this thing. I have done a lot of work. I deserve it." Jensen eventually sold the stock to Kimble for $.02 per share.[4] Kimble informed Jensen that the stock was for himself, Mason, and Mason's associates. At the time of the sale, the market price of Sage Court stock was $1.87 per share.

Throughout the relevant time period, Jensen's father-in-law was the Vice–President and a Director of Sage Court.[5] Jensen acknowledged that he never contacted his father-in-law, or anyone else at Sage Court, to try to discover any details about the proposed deal before agreeing to convey, or actually conveying, the plaintiffs' stock to the defendants.

The merger between Herbalife and Sage Court was approved by the shareholders of Sage Court, including the plaintiffs, and consummated on November 24, 1986. However, the subsequent public offering envisioned by the two companies never occurred, and efforts for an S–1 Registration were abandoned in early 1987 when it became apparent that the corporate earnings of the new company would not support a hoped for stock price of $20 per share. There is no indication that the plaintiffs complained of any fraud or deception on the part of the defendants until more than a year after the merger was consummated and well after the S–1 Registration efforts collapsed. The plaintiffs eventually filed this action against the defendants in February 1988, alleging that Kimble induced them to sell their stock to the defendants by making material misrepresentations and omissions, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. The plaintiffs requested both rescission and compensatory damages.

The district court dismissed the plaintiffs' claims on summary judgment.[6] The court concluded that Kimble was not liable to the plaintiffs for any omissions or misrepresentations because Kimble was under no duty to disclose information to Jensen, Jensen was aware of Kimble's failure to disclose, and Kimble's representations consisted merely of predictions rather than statements of fact. Because the liability of the other defendants was premised on the liability of Kimble, the court concluded that the other defendants were similarly devoid of liability. On appeal, the plaintiffs challenge the district court's conclusion that Kimble made no actionable omissions or misrepresentations.[7]

## STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). The court applies the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c). *Id.* Rule 56(c) permits summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In analyzing whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

The moving party has the initial burden of demonstrating the absence of any genuine issue of material fact to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Bacchus Indus.*,

---

**4.** The number of shares sold by each individual plaintiff were as follows: Tiffny Jensen sold 750,-000 shares and Capital Venture sold 300,000 shares.

**5.** Jensen's father-in-law resigned his position sometime after November 3, 1986.

**6.** The district court granted the defendants' second motion for summary judgment. The court denied the defendants' first motion for summary judgment because discovery had not yet been completed.

**7.** In their complaint, the plaintiffs also alleged that the defendants violated §§ 5 and 14 of the Securities Act of 1933 and § 61–2–22 of the Utah Uniform Securities Act. These claims were similarly dismissed by the district court on summary judgment and are not at issue in the current appeal.

*Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact. *Bacchus*, 939 F.2d at 891. To discharge its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). If the nonmoving party fails to make this showing with respect to any element essential to its case and on which it bears the burden of proof at trial, then the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

## DISCUSSION

■ Section 10(b) of the Securities and Exchange Act of 1934 prohibits the use "in connection with the purchase or sale of any security ... [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated Rule 10b–5, which provides in relevant part:

> It shall be unlawful for any person ...
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,
>
> .     .     .     .     .
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. In light of Rule 10b–5, it is clear that a person can be liable for making either material misrepresentations or material omissions in connection with the purchase or sale of securities. *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*, 717 F.2d 1330, 1332 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984).

In the instant case, the plaintiffs assert that Kimble is liable under Rule 10b–5 for making both material omissions and material misrepresentations in connection with their sale of Sage Court stock. We will address each of these contentions in turn.

### A. *Material Omissions*

■ On appeal, the plaintiffs contend that Kimble violated Rule 10b–5 by failing to disclose to Jensen the nature of the deal, the identity of the merger partner, or the identity of all the persons who were to receive the plaintiffs' stock. The district court concluded that these omissions were not actionable because Jensen knew of these omissions and no relationship of trust existed between Jensen and Kimble giving rise to a duty to disclose. We agree with the district court's conclusion that Kimble's omissions were not actionable under Rule 10b–5 because Kimble specifically advised Jensen of these nondisclosures and therefore Jensen sold the plaintiffs' stock with full awareness of Kimble's omissions.[8]

■ The SEC's authority to proscribe material omissions under Rule 10b–5 cannot exceed the power granted to it under Section 10(b) of the Securities and Exchange Act of 1934. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). Section 10(b) empowers the SEC to promulgate rules only with respect to "manipulative" and "deceptive" trading practices. 15 U.S.C. § 78j(b). Accordingly, only those material omissions which qualify as manipulative or deceptive practices may properly be considered to fall within the purview of Rule 10b–5. *Voege v. Magnavox Co.*, 439 F.Supp. 935, 941 (D.Del.1977) ("The untrue statements and omissions to state material facts which Rule 10b–5(b) are concerned with are limited to those which constitute manipulative or deceptive devices.").

---

8. Given our holding, we find it unnecessary to reach the question of whether a relationship of trust existed between Jensen and Kimble.

The Supreme Court recognized that the scope of Rule 10b–5 was limited to manipulative or deceptive practices in *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). In that case, Santa Fe Industries used the short form merger procedure provided by Delaware Corporation Law to cash out the minority shareholders of Kirby Lumber Company. The minority shareholders subsequently brought suit against Santa Fe, contending that Santa Fe violated Rule 10b–5 by grossly undervaluing their stock in breach of its fiduciary duty, and by invoking the short form merger procedure in the absence of a valid business purpose. The Supreme Court rejected the minority shareholders' suit, reasoning that Rule 10b–5 extended to claims of corporate mismanagement "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive.'" *Id.* at 473–74, 97 S.Ct. at 1301. The Court concluded that the minority shareholder's claims of mismanagement did not satisfy this requirement, and therefore, that the district court properly dismissed their suit for failure to state a claim. *Id.* at 469, 477, 97 S.Ct. at 1298, 1302–03.

As in *Green*, we do not believe Kimble's omissions can be fairly viewed as manipulative or deceptive. As Rule 10b–5 indicates, a manipulative or deceptive omission is an omission which renders the other affirmative statements made by an individual misleading. *See* 17 C.F.R. § 240.10b–5(b). Such a result may occur, thereby giving rise to a duty to disclose, when the parties are in "a fiduciary or other similar relation of trust and confidence." *Windon Third Oil and Gas v. FDIC*, 805 F.2d 342, 347 (10th Cir.1986) (quoting *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980)), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). Even when a relationship of trust exists between two parties, however, where the non-disclosing party explicitly informs the other party of his failure to disclose, an omission will not be misleading in the absence of special circumstances such as the inability of the dependent party to understand or appreciate the significance of the undisclosed information.[9]

In the instant case, Kimble explicitly told Jensen during their initial conversation on October 29 or 30 that he could not reveal the nature of the deal, the identity of the merger partner, or the identity of those who would receive the plaintiffs' stock. Furthermore, Kimble told Jensen that he didn't "understand ... the big picture" like Kimble did. These affirmative statements by Kimble clearly notified Jensen that Kimble was not disclosing certain information with respect to the Sage Court deal and with respect to the proposed stock transaction to be performed by Jensen. In other words, by virtue of the disclosures that Kimble did make, Jensen knew what he didn't know. Under these circumstances, even assuming arguendo that a special relationship of trust existed between Jensen and Kimble, we do not believe it can be said that Kimble's omissions misled Jensen with respect to any of Kimble's other remarks. Accordingly, even viewing the evidence in the light most favorable to the plaintiffs, we conclude that Kimble's omissions were neither manipulative nor deceptive within the meaning of Rule 10b–5 and thus are not actionable under this rule.

We find support for our conclusion in the First Circuit's decision in *Willco Kuwait S.A.K. v. deSavary*, 843 F.2d 618 (1st Cir. 1988). In *Willco*, the defendant sold a 50% interest in an oil refining company to the plaintiff. After paying the initial downpayment required by the sales contract, the plaintiff refused to make any additional payments and brought suit under Rule 10b–5 for securities fraud. In support of its suit, the plaintiff attempted to introduce evidence at trial of the price that the defendant initially paid for the refinery. The trial court excluded this evidence and the First Circuit affirmed. The latter court reasoned that because the plaintiff knew at the time the sales contract was executed that the defendant refused to divulge the price it initially paid for the refinery, "there can be no claim of

---

**9.** There are no such circumstances here. Jensen was a very experienced, sophisticated, and successful investor who was under no compulsion to sell the plaintiffs' stock. He could readily have declined to sell until he was properly apprised of the undisclosed information had he believed that course of action was in the plaintiffs' best interests.

misrepresentation or material omission relative to the price information." *Willco,* 843 F.2d at 627. Accordingly, the court concluded that the price information was of little relevance and thus inadmissible.[10]

■ We conclude that the district court properly granted summary judgment for the defendants with respect to Kimble's alleged omissions.[11]

### B. *Material Misrepresentations*

■ In addition to his failure to disclose certain inside information, the plaintiffs assert that Kimble also violated Rule 10b–5 by misrepresenting that Jensen's sale of Sage Court stock would bring in some "very influential" people who "could potentially solidify" the merger between Herbalife and Sage Court and that without the sale the deal "may just not happen." *See* Aplnt's Br. at 10–11, 30–31. According to the plaintiffs, these statements were untrue because the recipients of their stock were already involved in the merger and the merger was a done deal prior to the sale of their stock. The district court rejected the plaintiffs claim of affirmative misrepresentations on the ground that the alleged misrepresentations were too speculative to be actionable under

Rule 10b–5. We do not reach this issue because we conclude that the plaintiffs have failed to satisfy their summary judgment burden of coming forward with specific facts to support one of the elements of their claim upon which they had the burden of proof: namely that Kimble's remarks were untrue. *See Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1516 (10th Cir.1983) (in misrepresentation case under Rule 10b–5 burden is on plaintiff to establish that defendant made false representation).[12]

The plaintiffs argue that their stock was not needed to bring in any influential people to solidify the merger because all the recipients of their stock were already involved in the deal. However, there is no evidence in the record that any of the party defendants other than Kimble and Mason were involved in the Herbalife merger prior to the plaintiffs' sale of stock. Furthermore, even if all the party defendants had been involved in the deal prior to the sale, there is no evidence that they would have continued to pursue the deal in the absence of the additional incentive provided by the plaintiffs' stock.

As evidence that their stock was unnecessary to enlist the assistance of the party

---

**10.** In *Platsis v. E.F. Hutton & Co., Inc.,* 642 F.Supp. 1277 (W.D.Mich.1986), *aff'd,* 829 F.2d 13 (6th Cir.1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988), the court similarly concluded that the plaintiff's knowledge of certain omissions in the prospectuses for oil and gas shelter limited partnerships in which he invested was "fatal to his claim" that these omissions violated Section 12(2) of the Securities Act of 1933. *Id.* at 1294. Of course, Section 12(2) of the 1933 Act explicitly provides that liability shall not lie for the failure to disclose a material fact in a prospectus where "the purchaser ... know[s] of such untruth or omission." 15 U.S.C. § 77*l*(2)

**11.** The plaintiffs also contend at one point in their brief that Kimble is liable for failing to disclose to Jensen prior to the October 31 trade the existence of the letter of intent signed by Sage Court and Herbalife on October 30. However, the plaintiffs failed to raise this argument below in response to the defendants' second motion for summary judgment. The only reference the plaintiffs made to the letter of intent consisted of a single statement that Jensen did not have a copy of the letter during his meeting with Kimble on November 3. Aplnt's App. at 324. At best, we construe this statement as raising a

claim of omission only with respect to the November 3 sale. Accordingly, we find the plaintiffs' contention that Kimble committed an actionable omission by failing to disclose the letter of intent prior to the October 31 sale to be a new argument which we decline to consider for the first time on appeal. *See Farmers Ins. Co., Inc. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989); *Burnette v. Dresser Indus., Inc.,* 849 F.2d 1277, 1282 (10th Cir.1988).

We note that any claim of omission with respect to the November 3 sale of stock is without merit. It is undisputed that the existence of the letter of intent was public knowledge by November 3 and Jensen himself admitted that he learned about the letter of intent immediately following the October 31 sale. There is no duty under Rule 10b–5 to disclose information that is already in the public domain and known by the plaintiff. *See Acme Propane, Inc. v. Tenexco, Inc.,* 844 F.2d 1317, 1323 (7th Cir.1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 755 (2d Cir. 1986).

**12.** We may affirm the district court on any grounds that find reasonable support in the record. *In re Slack–Horner Foundries Co.,* 971 F.2d 577, 580 (10th Cir.1992).

defendants, the plaintiffs rely on the fact that Mason received a share of Herbalife stock as a finder's fee. However, Mason stood to gain as a result of his share of Herbalife stock whether Herbalife merged with Sage Court or some other "clean shell." This fact fails to establish that Mason, let alone the other party defendants, was willing to effectuate the merger between Herbalife and Sage Court in the absence of the plaintiffs' stock. Similarly, the testimony of George Betts, an officer of Herbalife, that his company was unconcerned about whether the party defendants received any Sage Court stock does not deny that the party defendants were influential in ensuring the continued participation of Sage Court.

The plaintiffs' contention that the merger was essentially a done deal prior to their sale of stock is equally devoid of any factual support in the record. Indeed, the evidence that does exist suggests the contrary. The evidence established that the letter of intent was not signed until after Jensen had agreed to sell three million shares of the plaintiffs' Sage Court stock as requested by Kimble. Furthermore, even after the letter of intent was signed, the deal remained subject to many contingencies, including approval by the Sage Court shareholders. There is nothing in the record establishing that the defendants were not instrumental in effectuating these remaining contingencies.

Based on our review of the record, therefore, we conclude that the plaintiffs have failed to establish by any evidence that Kimble's representations to Jensen concerning the need for the plaintiffs' stock at below market price were untrue. This failure of proof concerning an element of the plaintiffs' claim requires us to affirm the district court's grant of summary judgment to the defendants irrespective of the existence of any other factual disputes.

Accordingly, for the foregoing reasons, we AFFIRM the district court's order dismissing the plaintiffs' claims on summary judgment.