GARWOOD, Circuit Judge,
dissenting:
I concur in the majority opinion to the extent that it affirms the dismissal of UPRG’s conversion, securities fraud and negligent misrepresentation claims. However, I respectfully dissent from the reversal and remand of the judgment dismissing UPRG’s fraud claim.
The majority, correctly, does not contend that there is any evidence that RPI made any false or misleading factual representation to UPRG or that RPI failed to disclose to UPRG any fact necessary in order to make the facts which it did represent to UPRG not misleading. Rather, the majority asserts that there is evidence that RPI committed fraud on UPRG by breaching a duty to make full disclosure to UPRG. I disagree.
It has always been unclear to me just what UPRG claims should have been but was not disclosed. UPRG’s ultimate complaint is that, about a year after RPI’s sale to OCI, UPRG was called upon by OCI to come up with UPRG’s forty-nine percent share of the then some 4.6 million dollar difference between the actual funding of the new pension plans for partnership employees and the appropriate PBO level for those plans. This wholly resulted from the *592 facts — disclosed by RPI and known to UPRG — that RPI was transferring from its pension plans to the OCI plans assets sufficient only to meet ABO levels (not the higher PBO levels) for the transferring employees, that under the RPI plans’ “contributions are intended to provide for benefits attributable for service rendered to date, as well as for those expected to be earned in the future” (i.e., PBO), that OCI was going to continue the business (which would render PBO funding appropriate), agreed to have the transferring employees covered by “substantially similar” plans as they were before, and assumed liability for those employees’ accrued benefits as they thereafter became due, and that OCI would receive a credit on its purchase price obligation equal to fifty-one percent (RPI’s partnership percentage) of the difference between the ABO and PBO funding levels for the plans for the transferred employees. RPI disclosed and UPRG knew all these facts. Moreover, UPRG plainly knew, and certainly RPI could reasonably assume UPRG knew, that the PBO level would exceed the ABO level. All UPRG didn’t know was the amount by which the PBO level would exceed the ABO level, and clearly UPRG knew it didn’t know this. Nothing RPI said can be construed either as any sort of implied representation as to the extent of this PBO/ABO difference or as any sort of implied characterization of the extent of that difference as being minor or the like.
The majority labels all this as a “quintessential red herring.” This characterization is hard to understand, as the extent of the PBO/ABO difference is the entire reason for and the measure of the “loss” of which UPRG complains. The majority claims that “what is at issue” is that at the time of the RPI-OCI agreement, and when RPI made disclosures to UPRG respecting it, the value of the assets of the plans was substantially above ABO, and that this was not disclosed to UPRG. Nothing, however, is pointed to as constituting any even implied representation by RPI to UPRG that either plan was then not funded (or did not have assets with a then market value) materially above ABO. Nor is there any evidence that UPRG believed, or construed anything RPI had said as even impliedly representing, that the plans were funded (or that their assets had a then market value) only at or below, or not materially above, ABO. To the contrary, the partnership audited financial statements, furnished annually to UPRG state respecting these plans that “contributions are intended to provide benefits attributable to services rendered to date, as well as for those expected to be earned in the future.” At oral argument, counsel for UPRG read this language and characterized it as stating “That’s PBO” and as constituting evidence that the plans were then funded “above ABO.”
I also note that there is no evidence that RPI ever failed to furnish UPRG any information which UPRG requested respecting the value of the assets of the plans in reference to ABO or PBO, or the extent of the difference between ABO and PBO funding of the plans.
Apropos here are the remarks of the Tenth Circuit in Jensen v. Kimble, 1 F.3d 1073 (10th Cir.1993), upholding summary judgment for the defendant Kimble in a securities fraud case, viz:
“... [B]y virtue of the disclosures that Kimble did make, Jensen knew what he didn’t know. Under these circumstances, even assuming arguendo that a special relationship of trust existed between Jensen and Kimble, we do not believe it can be said that Kimble’s omissions misled Jensen with respect to any of Kimble’s other remarks. Accordingly, even viewing the evidence in the light *593 most favorable to the plaintiffs, we conclude that Kimble’s omissions were neither manipulative nor deceptive within the meaning of Rule 10b-5 and thus are not actionable under this rule.” Id. at 1078.
If the concept of “fraud” is so protean and malleable as to allow UPRG recovery-on this record, then the value of written contracts between even the most sophisticated businesses is substantially undercut and we have given an unfortunate boost to the rule of ad hocracy and a concomitant disservice to the rule of law.