PAUL KELLY, Jr., Circuit Judge.
Plaintiff-Appellant Darla Adler appeals from summary judgment granted in favor of Defendant-Appellee Wal-Mart Stores, Inc. on her Title VII claim for hostile work environment sexual harassment and her state claim for intentional infliction of emotional distress. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Background

Plaintiff began her employment at the Wal-Mart Distribution Center in Loveland, Colorado, on July 12, 1993. On October 30, 1993, she was assigned to a position in the battery room of the maintenance department. Much of the work in the Center was performed with forklifts, and Plaintiff’s duties in this position were to clean and *669 change forklift batteries. In the fall of 1994, she was promoted to forklift mechanic.
Shortly after Plaintiff was assigned to the maintenance department, male and female employees who were not in maintenance, but on the floor, began harassing her. For instance, various forklift drivers suggested that Plaintiff got the position because she is a woman, and must have performed sexual favors for the maintenance manager, Jesse Kirehmeier, to get the position.
In January 1994, Plaintiff reported this to Mr. Kirehmeier and Earl Larson but would not disclose the names of any harassers. Mr. Larson was her immediate supervisor, an hourly employee without any authority to hire, fire, or formally discipline employees. In response to her complaint, Mr. Kirehmeier notified all other area managers that if their forklift drivers could not act appropriately in the maintenance department, the drivers would have to get their managers to take the forklifts in for maintenance. Harassment from floor employees then stopped, and many employees apologized to Plaintiff. After these events, Mr. Kirehmeier asked Plaintiff weekly whether she was having any problems and, until after the events of August 14 discussed below, Plaintiff told him everything was fine.
In December 1993 or January 1994, a coworker of Plaintiffs, Alan Zalaznik, proposed to do some electrical work in her home in exchange for oral sex. A day or so later, Mr. Zalaznik told Plaintiff that he thought he saw her in Mr. Kirehmeier’s office with her head bobbing up and down, and insinuated that she had gotten her job by giving sexual favors to Mr. Kirehmeier. Plaintiff reported these incidents to Mr. Larson, who had Mr. Zalaznik apologize to Plaintiff.
In March 1994, in the parking lot and off the clock, Mr. Zalaznik hesitated to walk in the rain." Plaintiff laughed and told him he wouldn’t melt, and if he did she would scoop him up. Mr. Zalaznik responded by grabbing his crotch and making a lewd statement. See ApltApp. at 82. Plaintiff reported the parking lot incident to Mr. Larson, who informed Mr. Kirehmeier. Mr. Larson gave Mr. Zalaznik a verbal warning, and lodged a document in his file to that effect. Mr. Larson also explained to Mr. Zalaznik WalMart’s sexual harassment policy and the seriousness of sexual harassment—that he could be fired for such comments—and required Mr. Zalaznik to apologize again to Plaintiff. Mr. Larson considered more severe discipline inappropriate based on this incident because both employees were off the clock and in the parking lot. Harassment from Mr. Zalaznik then stopped.
Other coworkers harassed Plaintiff in various additional incidents, but Plaintiff either did not report them, or cannot recall specifically when or what she may have said to anyone about them. On August 14, 1994, incidents occurred which Plaintiff did report, involving maintenance coworkers Matt Berwick and Ray McFarland. At one point, Mr. Berwick and Mr. McFarland shook a bottle of baby powder at her and said they wanted to powder her bottom. The same day, Plaintiff played a practical joke on Mr. Berwick and Mr. McFarland. She poured water on the foam seats of their cart so that when they sat down their pants were soaked, and they had wet pants the rest of the day. Later that day, Mr. Berwick climbed on the forklift that Plaintiff was operating and wrapped his leg around her. In addition, Mr. McFarland called Plaintiff from a phone at Wal-Mart and told her that he thought she would be fun in bed and that he wanted to meet her in the parts room to have sex. After this call, Plaintiff was frightened and hid under a desk to avoid him.
Plaintiff reported these events to Mr. Larson, who relayed them to Mr. Kirehmeier, who in turn relayed them to the Personnel Director, Bill Clauser. Within a day, Mr. Clauser and Mr. Kirehmeier interviewed Plaintiff, and Mr. Clauser then interviewed about ten individuals, 'compiling some twenty-seven pages of notes. In his investigation, Mr. Clauser learned 'of previous unreported incidents of harassment by Mr. Berwick and Mr. McFarland. Mr. Clauser also gained information about Plaintiff’s own participation in the joking, including sexually suggestive gestures and comments. In. particular, he learned of her apparently joking discussions with coworkers of how she *670 could set up Mr. Kirehmeier on false sexual harassment charges if paid to do so.
As a result of the investigation, Mr. McFarland was given what is called a “Step One” in Wal-Mart’s disciplinary scheme. There are four potential verbal warnings short of a Step One. A Step One is a written coaching record. Mr. Berwick was given a Step Three, which is a paid one-day suspension—a “decision day” during which the employee considers whether he or she wants the job, and submits a written corrective plan to return to work. This is the only discipline in Wal-Mart’s scheme short of a Step Four, which is termination. Mr. Berwick’s discipline was more severe because he initially denied the events. Ms. Adler was given a Step One for her actions. Harassment from Mr. Berwick and Mr. McFarland then stopped.
On November 9, 1994, an employee referred to in the record as Larry (because Plaintiff cannot recall his full name) ran his hand down Plaintiffs back to the tailbone. She cannot recall specifically when; but on November 18, she reported this incident. On November 12, 1994, Steve Runyon ran his fingers through Plaintiffs hair, touching her head and neck, in an attempt to talk her out of taking his forklift. On November 18, Plaintiff reported these events to Mr. Larson and Mr. Kirehmeier. Mr. Clauser interviewed both Mr. Runyon and a Larry Medina, thought to be the Larry harasser. Mr. Runyon admitted his conduct and Mr. Clauser counseled him on Wal-Mart’s sexual harassment policy and documented this action, in Mr. Runyon’s personnel file. Mr. Medina denied any incident, and Mr. Clauser was unable to find anyone who could corroborate Plaintiffs account. Mr. Clauser nevertheless took the opportunity to explain WalMart’s sexual harassment policy to Mr. Medina. Plaintiff left work the next day, taking a leave of absence from November 19, 1994 until January 4, 1995, when she resigned.
On appeal, Plaintiff contends the district court erred in granting summary judgment on her Title VII hostile work environment claim by concluding that: (1) Wal-Mart lacked knowledge of unreported incidents of harassment; (2) no perpetrators repeated their harassing conduct; and (3) Wal-Mart’s remedial action was adequate, although she later suffered harassment by others. Plaintiff also contends that the district court erred in granting summary judgment on her intentional infliction of emotional distress claim by concluding that the claim is preempted by the Colorado Worker’s Compensation statute.

Discussion

I. Summary Judgment
We review the grant of summary judgment de novo applying the same standard as the district court embodied in Rule 56(c). See Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir.1995). Summary judgment is proper if the movant demonstrates that there is “no genuine issue as to any material fact” and that it is “entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(e). In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 781 (10th Cir.1995). An issue is “genuine” if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is “material” if under the substantive law it is essential to the proper disposition of the claim. See id. If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial. See Celotex Corp. v. Catrett, 471 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is no genuine issue of material fact, we next determine whether the district court correctly applied the substantive law. See Hirase-Doi, 61 F.3d at 781.
The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter *671 of law. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant’s claim. See id. at 325, 106 S.Ct. 2548. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant’s claim. See id.
If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and “set forth specific facts” that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. Fed.R.Civ.P. 56(e); see Lujan v. National Wildlife Fed’n, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Anderson, 477 U.S. at 248, 106 S.Ct. 2505. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. See Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Thus, although our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties.
Plaintiff gives insufficient attention to the procedural posture of this appeal and to the important policies furthered by the rules governing the relationship between the district and circuit courts. Wal-Mart carried its initial burden of production on summary judgment, taking each incident of harassment alleged in the complaint and demonstrating with numerous references to attached exhibits that Wal-Mart either lacked actual or constructive notice of the incident or that it adequately responded thereto. Rather than argue on appeal that her response to this motion was adequate to carry her burden to set forth specific facts demonstrating a genuine issue of material fact, Plaintiff argues that the district court erred based on specific facts and arguments .not brought to its attention. After reviewing Plaintiffs response—from the perspective of the district court, and in accordance with Rule 56 and the cases construing it—the propriety of summary judgment against her is readily apparent.
Although length of the motion materials is certainly not dispositive, it is telling in this case. Plaintiff submitted, in response to the summary judgment motion, approximately three and one half pages of argument on the essential element as to which Wal-Mart demonstrated an absence of evidence—the inadequacy of Wal-Mart’s response to incidents of which it had notice. This was the only ground argued by Wal-Mart for summary judgment on the hostile work environment sexual harassment claim. Plaintiffs discussion made only seven references to attached materials, including reference to only eight pages of Plaintiffs two hundred-and-ninety-page deposition, and none to any of the multitude of materials already in the record. None of these, as explained in detail below, demonstrated that a trial was required.[1] The eonclusory allegations in Plain *672 tiffs complaint, although verified, are of as little help in carrying her burden under Rule 56(e) as are the conclusory arguments in her brief.[2] See Fed. R. Civ. P. 56(c), (e); Celotex, 477 U.S. at 324,106 S.Ct. 2548; Thomas, 968 F.2d at 1024; Conaway v. Smith, 853 F.2d 789, 792-93 (10th Cir.1988).
It should be no surprise that Plaintiffs response was inadequate given the complexity of the issue presented. Indeed, the requirement that the nonmovant specifically reference facts in its motion materials and the record is of special importance in an employment discrimination case. Unlike the archetypical automobile accident, these cases typically involve numerous incidents over long periods of time, numerous documents (including elaborate policies, handbooks, and manuals), and lengthy depositions of the plaintiff, supervisor, managers, fellow employees, and physicians. Thus, where the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548; Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir.1996); Thomas, 968 F.2d at 1024-25; Downes v. Beach, 587 F.2d 469, 472 (10th Cir.1978).
Consider that in this ease, aside from the twenty-six pages of evidentiary material submitted by Plaintiff, there were already approximately eight hundred pages of text in the record. The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so. See Downes, 587 F.2d at 472. If the rule were otherwise, the workload of the district courts would be insurmountable and summary judgment would rarely be granted. Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party’s case for it. See Thomas, 968 F.2d at 1025; Downes, 587 F.2d at 471-72 (quoting Bushman Constr. Co. v. Conner, 307 F.2d 888, 892-93 (10th Cir.1962)).
In short, the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and Celotex or explain why it cannot pursuant to Rule 56(f). See Fed.R.Civ.P. 56(e), (f). Otherwise, the nonmovant acts, or fails to act, at its peril. The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court. See id.
II. Hostile Work Environment Sexual Harassment
Plaintiff argues that she was subjected to sex discrimination at the Wal-Mart Distribution Center. Title VII’s prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment. See 42 U.S.C. § 2000e-2(a)(1); Hirschfeld v. New Mexico Corrections Dep’t, 916 F.2d 572, 575 (10th Cir.1990). This harassment occurs where “[sexual] conduct has the purpose or effect of unreasonably interfering with an individual’s work performance or creating an intimidating, hostile, or offensive working environment.” Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting 29 C.F.R. § 1604.11(a)(3) (1985)). To form the basis of a claim, the sexual harassment “must be sufficiently severe or pervasive ‘to alter the conditions of [the victim’s] employment and create an abusive working environment.’ ” Id. at 67, 106 S.Ct. 2399 (alteration in original) (quoting Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir.1982)). Based on the totality of the circumstances, the environment must be perceived both subjectively and objectively as abusive. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Smith v. Norwest Fin. Acceptance, 129 F.3d 1408, 1413 (10th Cir. *673 1997). We dispose of this claim based on the absence of employer liability, rendering the issue of the presence of a hostile work environment. immaterial for the purposes of appeal. See Jensen v. Kimble, 1 F.3d 1073, 1080 (10th Cir.1993).
A. Employer Liability
The Supreme Court in Mentor declined to issue a “definitive rule on employer liability” for sexual harassment, but observed that Congress’s definition of “employer” in Title VII includes any “agent” of an employer. Meritor, 477 U.S. at 72, 106 S.Ct. 2399 (citing 42 U.S.C. § 2000e(b)). The Court concluded based on this definition that Congress intended the courts to “look to agency principles for guidance in this area.” Id. Congress concomitantly intended that there be some limits on employers’ responsibility for sexual harassment by its employees. See id.
In accordance with Mentor, this court has identified three alternative bases drawn from agency principles for holding an employer liable for hostile work environment sexual harassment. See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1417-18 (10th Cir.1987). These are (1) where the acts are committed by an employee acting “within the scope of [his or her] employment”; (2) where the employer was negligent or reckless; or (3) where the employee purported to act or to speak on behalf of the employer and there was reliance upon apparent authority, or the harasser was aided by the agency relation. Id. (quoting Restatement (Second) of Agency § 219(1), (2)(b), & (2)(d) (1958)).
The basis for employer liability alleged in this case is Wal-Mart’s negligence in allowing fellow employees to engage in sexual harassment. “Under this theory of employer liability, the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment.” Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1444 (10th Cir.) (internal quotation marks omitted) (citation omitted), petition for cert. filed, 66 U.S.L.W. 3137 (1997). We have also said in this context that employer negligence is “ ‘failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable' care should have known.’ ” Hirschfeld, 916 F.2d at 577 (quoting EEOC v. Hacienda Hotel, 881 F.2d 1504, 1516 (9th Cir.1989)); see 29 C.F.R. § 1604.11(d).[3] This is not derivative liability according to the doctrine of respondeat superior, but direct liability for negligence. See Hirschfeld, 916 F.2d at 577 n. 5. Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first, into the employer’s actual or constructive knowledge of harassment, and second, into the adequacy of the employer’s remedial and preventative responses to any actually or constructively known harassment.
1. Knowledge
An employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known. See id. at 577. Actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees. See Swentek v. USAIR, Inc., 830 F.2d 552, 558 (4th Cir.1987). Regarding constructive knowledge, many courts have held that the pervasiveness of sexual harassment can properly lead to an inference of knowledge. See, e.g., Baker v. Weyerhaeuser Co., 903 F.2d 1342, 1346 (10th Cir.1990); Swentek, 830 F.2d at 558; Katz v. Dole, 709 F.2d 251, 255 (4th Cir.1983). This is, however, mere application of the negligence standard: highly pervasive harassment should, in the exercise of reasonable care, be discovered by management-level employees.
In judging Wal-Mart’s knowledge in this case, the incidents of harassment fall *674 into two categories: (1) those which Plaintiff reported to either Mr. Larson or Mr. Kirchmeier, or both, and (2) those which Plaintiff either did not report, or which she may have reported but respecting which she could not recall any date, content, or recipient. Regarding the first category, Mr. Kirchmeier was a management-level employee of WalMart in that he was maintenance manager and had authority to hire, fire, and formally discipline employees. Mr. Larson was a low-level supervisor, but also a management-level employee for our purposes because he was titled “supervisor” and had some authority over Plaintiff, and many of her coworkers, and reported to Mr. Kirchmeier. See 29 C.F.R. § 1604.11(d). Thus, the incidents of which Plaintiff told either Mr. Kirchmeier or Mr. Larson, or both, put Wal-Mart on actual notice and triggered Wal-Mart’s obligation to respond. The incidents in this category, viewing the evidence in the light most favorable to Plaintiff, which she adequately brought to the attention of the district court were: the December 1993 and January 1994 incidents regarding floor employees, the December 1993 or January 1994 incidents involving Mr. Zalaznik, the March parking lot incident, the August 14 incidents, and the November incidents. We analyze the adequacy of Wal-Mart’s responses to these incidents below.
In the second category are various additional incidents of harassment which Plaintiff alleged in her verified complaint. Viewing the evidence in the light most favorable to Plaintiff, we consider these to have occurred; however, she failed to reference for the district court specific facts evidencing knowledge of these incidents on the part of WalMart’s management-level employees. Apart from her arguments analyzed below, she did not report any of these additional incidents to Mr. Kirchmeier, see I Aplt.App. at 195-96, and she cannot recall the content, supervisory recipient, or date of any other complaints, see, e.g., I Aplt.App. at 237-40.
Plaintiff argued below that WalMart had knowledge of and failed to respond to an incident in January 1994 when Mr. Zalaznik called Plaintiff a “tramp,” because it was in front of Mr. Trauernicht, “who later became a supervisor who did nothing.” II ApltApp. at 773 (emphasis added). This not only did not help to carry Plaintiff’s burden on summary judgment, but bordered on the frivolous.
Plaintiff also argued that Wal-Mart had knowledge of an incident in which Mr. McFarland made a sexual comment in the break room in the presence of Mr. Trauernicht. If Mr. Trauernicht were a hourly supervisor at that time, Plaintiff would have had an argument that Wal-Mart was obliged to respond to this incident but did not. Plaintiff, however, did not specify for the district court when this incident occurred or when Mr. Trauernicht became a supervisor. See I. Aplt.App. at 238. She therefore made only an unsupported allegation and failed to carry her burden on this point. Regardless, our review of the record shows that she does not recall when this incident occurred or when he became a supervisor, nor does the record at any place show when he became a supervisor.
Plaintiff argues on appeal that she reported harassment to Jeff Schwartz, an hourly supervisor outside of her department. Plaintiff did reference for the district court her deposition evidencing she complained to Mr. Schwartz about Mr. Berwick and Mr. McFarland, see I. ApltApp. at 230, but she stated also in her deposition testimony that she did not “remember when or exactly what was said,” I ApltApp. at 240. As noted above, quick and effective action was taken when Plaintiff complained to Mr. Larson. Vague, conclusory statements do not suffice to create a genuine issue of material fact.
In addition, Plaintiff argues on appeal that her receipt of a Step One disciplinary action after reporting the August 14 harassment made her reluctant to report additional incidents. Plaintiff did not specifically reference evidentiary material to support this argument in the district court. Regardless, all of the unreported incidents at issue occurred before this mid-September 1994 disciplinary action. Plaintiff does not allege the occurrence of any incidents of harassment at all between September and the reported November incidents. Thus, according to Plain *675 tiff, there were no incidents to report which any fear of retaliation could have suppressed. Moreover, Plaintiff was informed that her discipline was for her participation, not for the reporting of harassment.[4]
Plaintiff also argues that Mr. Kirehmeier’s comment, relayed to her by Mr. Larson, that if the problem continued he might fire them all explains her failure to report additional incidents of harassment. Plaintiff did not raise and support this argument below, resulting in waiver. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir.1998); 10th Cir. R. 28.2(b). Regardless, this isolated remark, assuming its admissibility, is simply not enough to support a reasonable inference that Plaintiff feared retaliation. Such an inference, based on the record, could only be the result of speculation. Moreover, the uneontroverted evidence compels a contrary inference. Mr. Kirchmeier had gone to all area managers after Plaintiffs January complaint and protected her from further harassment from workers off the floor. He and Mr. Larson disciplined Mr. Zalaznik and required him to apologize to her after the March complaint. Furthermore, according to her deposition testimony, Plaintiff knew Wal-Mart would not tolerate sexual harassment, and Mr. Kirchmeier reminded her when he cheeked with her periodically that her job was not in jeopardy.
Finally, Plaintiff argues that her harassment by coworkers was so pervasive that Wal-Mart’s knowledge should be inferred. It would be illogical to require for this inference only the level of pervasiveness essential to make out a hostile environment claim. If this were the rule, knowledge would be attributed to employers in all eases of hostile environment founded on pervasiveness. Still, an adequate showing of pervasiveness may result in an inference of knowledge, but Plaintiff failed to alert the district court to sufficient specific facts to support such a finding. See Baker, 903 F.2d at 1346 (“[I]t is only when [the incidents] are so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failure to discover what is going on ....”) (quoting Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1422 (7th Cir.1986)). Instead, Plaintiff made only conclusory statements in her verified complaint and brief below about Wal-Mart’s knowledge, which do not help her to carry her burden on summary judgment. See Thomas, 968 F.2d at 1024; Conaway, 853 F.2d at 792-93. This is particularly true where, as here, the plaintiff was assuring a management-level employee throughout the relevant period that everything was fine. See I. Aplt.App. at 195-96.
None of the above arguments show Plaintiff came forward with sufficient specific facts below evidencing knowledge on the part of Wal-Mart of any incidents, in the second category. As a result, for purposes of the ruling on summary judgment, Wal-Mart had no obligation to respond to these incidents.
2. Employer Response
Plaintiff argues Wal-Mart responded inadequately to harassment of which it knew or should have known. This court has not yet enunciated a definitive test to measure an employer’s response-to hostile work environment sexual harassment. The relevant overarching doctrine drawn from principles of liability for acts of agents is that of negligence. See Hicks, 833 F.2d at 1417-18. Thus, the touchstone for the evaluation of an *676 employer’s response under Meritor and Hicks is reasonableness. An employer is not strictly liable for all harassment of which it actually or constructively knew; it may discharge its obligation by taking appropriate remedial or preventative action. See Meritor, 477 U.S. at 72, 106 S.Ct. 2399.
In Hirschfeld, we compared the employer’s response to those which our sister circuits have found adequate, focusing on promptness and effectiveness. See Hirschfeld, 916 F.2d at 578. We implied in particular that stoppage of the harassment by the disciplined perpetrator evidences effectiveness, and noted the relevance of this fact in our sister circuits’ eases. See id. at 578 (citing Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir.1989); Swentek, 830 F.2d at 558-59); cf. Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1002 (10th Cir.1996). The Ninth Circuit has explicitly held that the reasonableness of an employer response is measured by its ability to stop the harassment from the person disciplined. See Ellison v. Brady, 924 F.2d 872, 882 (9th Cir.1991).
In accordance with these principles and this court’s precedents, we adopt the test employed by some of our sister circuits, asking whether the remedial and preventative action was “reasonably calculated to end the harassment.” Ellison, 924 F.2d at 882; see Knabe v. The Boury Corp., 114 F.3d 407, 412 (3d Cir.1997); Saxton v. AT & T Co., 10 F.3d 526, 535 (7th Cir.1993); Barrett v. Omaha Nat’l Bank, 726 F.2d 424, 427 (8th Cir.1984); Katz, 709 F.2d at 256. A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation. However, this is not the sole factor to be considered. Because there is no strict liability and an employer must only respond reasonably, a response may be so calculated even though the perpetrator might persist. See Knabe, 114 F.3d at 411-12, 412 n. 8.
In cases where effectiveness is not readily evidenced by a stoppage, we consider the timeliness of the plaintiffs complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. See id. at 414; Saxton, 10 F.3d at 535; Hirschfeld, 916 F.2d at 578; Ellison, 924 F.2d at 882. Courts have explained that simply indicating to a perpetrator the existence of a policy against harassment is usually insufficient. See, e.g., Katz, 709 F.2d at 256. By way of example, responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination. See Knabe, 114 F.3d at 413; Hirschfeld, 916 F.2d at 578 & n. 6; Swentek, 830 F.2d at 558; Barrett, 726 F.2d at 427; cf. Ellison, 924 F.2d at 882 (citing E.E.O.C. Compliance Manual (CCH) § 615.4(a)(9)(iii), ¶3103, at 3213 (1988)).
The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective. Repeat conduct may show the unreasonableness of prior responses. On the other hand, an employer is not hable, although a perpetrator persists, so long as each response was reasonable, It follows that an employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to the end the harassment. See Hirschfeld, 916 F.2d at 579 n. 6. (“While there may be egregious cases where such action is the only option for an employer, in less serious eases a reprimand, brief suspension, or other remedial steps may be sufficient to remedy the situation.”); see also Knabe, 114 F.3d at 414; Ellison, 924 F.2d at 882; Barrett, 726 F.2d at 427.
Unfortunately, some harassers may simply never change. Just as unfortunate, a victim may have to suffer repeated harassment while an employer progressively disciplines the perpetrator to determine whether he or she is just such a “hard head” case. It is some consolation for the victim that, to be reasonable, responses must prog *677 ress more rapidly in proportion to more serious and frequent harassment. The courts, however, must balance the victim’s rights, the employer’s rights, and the alleged harasser’s rights. If our rule were to call for excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination. See Knabe, 114 F.3d at 414 n. 12.
Plaintiff did not bring to the trial court’s attention sufficient evidence to establish the essential element for employer liability that Wal-Mart inadequately responded to ■incidents of harassment of which it knew or should have known. On the contrary, the record shows that Wal-Mart’s responses to each incident of which it had actual or constructive knowledge were prompt and either effective or proportional to the seriousness and frequency of the incidents, and therefore were reasonably calculated to end the harassment. Wal-Mart’s responses utilized all of the measures provided above as examples which the law aims to encourage employers to utilize.
In January, after Mr. Kirchmeier learned of comments from workers off the floor, but Plaintiff would not disclose names, Mr. Kirchmeier could not discipline individual harassers. Notwithstanding this handicap, his response ended the harassment from these employees. See I Aplt.App. at 195. Plaintiff came forward with no evidence that WalMart unduly delayed in responding to her report. Wal-Mart's response was prompt and its effectiveness shows it was reasonably calculated to end the harassment. Moreover, Mr. Kirchmeier then began asking Plaintiff periodically whether she was experiencing any problems.
After the December 1993 or January 1994 comments from Mr. Zalaznik, Mr. Larson had him apologize to Plaintiff. Plaintiff argues that this response was inadequate as evidenced by Mr. Zalaznik’s repeat conduct in March. We do not consider Wal-Mart’s response inadequate for several reasons. Mr. Zalaznik’s March comment was in response to Plaintiffs teasing. His comment was not- temporally proximate to the prior incident, but two to three months later. Finally, his comment was not made on the clock in the workplace, but off the clock and in the parking lot. These factors are important because “whether a particular action or incident establishes a purely personal, social relationship without a discriminatory .employment effect” or constitutes sexual harassment depends upon the totality of the circumstances, including the nature of the conduct and its context. See Discrimination Because of Sex Under Title VII of the Civil Rights Act of 1964, as Amended; Adoption of Interim Interpretive Guidelines, 45 Fed. Reg. 25,024 (1980) (codified at 29 C.F.R. § 1604.11); 29 C.F.R. § 1604.11(b).
That Mr. Zalaznik regressed over a period of three months does not necessarily mean .Wal-Mart’s initial, response was unreasonable. This was the first reported incident involving Mr. Zalaznik, so that Wal-Mart would not know what degree of discipline would be severe enough to deter him. Plaintiff failed to come forward with any evidence that Mr. Larson’s response was unduly delayed. Thus, although Mr. Zalaznik ultimately required more severe discipline to subjectively deter him, we cannot say under the circumstances that Wal-Mart’s response to these incidents was disproportionate to the seriousness and frequency of the harassment and thus unreasonable. See Knabe, 114 F.3d at 413 (holding under similar but more serious circumstances that counseling on policy without actual discipline was adequate response).
Following the March parking lot incident, Mr. Larson’s response ended the harassment from Mr. Zalaznik. See I Aplt.App. at 265. Wal-Mart did not vainly hope the same discipline as before would be effective, but made this discipline progressively more severe. Mr. Larson considered even more severe discipline inappropriate for-this incident because both employees were off the clock and in the parking lot, and we think this consideration reasonable. Mr. Larson’s response was prompt and progressively more severe, and its effectiveness indicates that it was reasonably calculated to end the harassment.
After Plaintiff reported the August 14 harassment, Mr. Clauser began investigating within a day and disciplined both harassers *678 for all discovered incidents. After WalMart’s response, Plaintiff testified that Mr. Berwick and Mr. McFarland “stayed away from me and they didn’t look at me.” See I Aplt.App. at 278-79. In addition, Mr. Kirchmeier offered Plaintiff a promotion to forklift mechanic, in part to put her on a schedule giving her the least possible contact with Mr. Berwick and Mr. McFarland. Wal-Mart’s response to the previously undiscovered incidents was not unduly delayed because Plaintiff’s complaints were untimely. Wal-Mart’s responses to these incidents were prompt and the stoppage shows they were reasonably calculated to end the harassment.
After receiving reports of the November incidents, Mr. Clauser immediately interviewed Mr. Runyon and Mr. Medina, who was thought to be the Larry involved in the November 9 incident.[5] Mr. Medina denied his involvement, and Plaintiff could not provide the full name of her alleged harasser. Mr. Clauser attempted to corroborate her story that Mr. Medina had harassed her, but was unable to do so. Mr. Clauser went ahead and counseled Mr. Medina on WalMart’s sexual harassment policy, but did not otherwise discipline him. This response was reasonable under the circumstances. See Knabe, 114 F.3d at 413. It would be unreasonable, and callous toward Mr. Medina’s rights, for the law to require Wal-Mart to discipline Mr. Medina for events he denies, of which Wal-Mart could not find evidence, especially when the complainant cannot specifically identify the harasser. Moreover, there is no evidence that there was any subsequent harassment by Mr. Medina. Although Plaintiff only worked at the center one more day, there was no evidence to support an inference that she would have suffered further harassment by Mr. Medina had she worked longer. See Knabe, 114 F.3d at 413-15. Thus, Plaintiff has not met her burden to set forth specific facts showing that Wal-Mart’s response to this report was lacking—either unduly delayed or ineffective.
Mr. Clauser disciplined Mr. Runyon in writing and counseled him on Wal-Mart’s sexual harassment policy. Plaintiff argues on appeal that Mr. Runyon made light of her complaint the next day, evidencing the inadequacy of Wal-Mart’s response. She did not, however, allege this incident in her verified complaint, nor did she refer the district court to any evidence of this allegation. Consequently, from the point of view of the district court, harassment by Mr. Runyon stopped after Mr. Clauser counseled him, evidencing that Wal-Mart’s response was reasonable. Moreover, Plaintiff came forward with no evidence that would support an inference that she would have suffered further harassment by Mr. Runyon if she had worked at the center longer. See Knabe, 114 F.3d at 413-15.
Plaintiff argues that the district court applied the wrong law by considering responses adequate because they stopped the harassment by the disciplined harasser, even though others harassed in the future. The Ninth Circuit has held that in measuring the reasonableness of an employer response a court may consider whether other potential harassers are deterred. See Ellison, 924 F.2d at 882. We also think this fact relevant, but Plaintiff came forward with no evidence in the district court that any future harasser knew of, or was at all motivated by, any prior Wal-Mart response. Without evidence of such a nexus between a prior response and later harassment by others, the later harassment is irrelevant to the adequacy of the prior response. Thus, based on the materials to which Plaintiff directed the district court’s attention, all known harassment was unconnected to any prior responses and stopped as a result of Wal-Mart’s remedial and preventative actions.
*679 The dissent does not seem to quarrel with-this nexus requirement, but suggests that the result in this ease' should be different because circumstantial evidence can be enough. See Dissent at 685. Irrespective of what sort of evidence could have' been sufficient, the record in this ease is complete and Plaintiff failed to submit any evidence, direct or circumstantial, indicating that the nature of any prior Wal-Mart response bore any relationship whatsoever to any future harassment.
For the dissent, the mere occurrence of the future harassment is enough circumstantial evidence to draw an inference of the inadequacy of prior employer responses. Whether even the immediate firing of each harasser would have actually deterred future wrongdoers is purely speculative, and factually impossible if the future harassers did not know about those actions. Unless we hold employers strictly liable for failing to broadcast sensitive disciplinary matters to their entire workforces, we cannot predicate liability on this theory. In addition, if the dissent’s inference is properly drawn on this record, it would be so in every case involving multiple incidents of harassment, and employers would be hard pressed to prove the negative—that future harassers were not motivated by prior employer responses.[6]
We recognize the sensibility of taking measures to prevent sexual harassment in the first instance, although such measures are not mandatory. See 29 C.F.R. § 1604.11(f) (1997); Mentor, 477 U.S. at 73, 106 S.Ct. 2399; 3 Lex K. Larson, Employment Discrimination § 46.07[4][a] (2d ed.1997). The dissent’s test, however, would make employers insurers against future sexual harassment by coworkers after an initial employer response, regardless of the nature of the response taken. ■ This is liability without end.
III. Intentional Infliction of Emotional Distress Claim
Plaintiff argues that her emotional distress claim is not preempted by the Colorado Worker’s Compensation statute. The district court, however, rested its summary judgment ruling alternatively on the ground that Plaintiff came forward with insufficient evidence of vicarious liability. In her opening brief, Plaintiff makes only two assertions, without citation to authority or the record, that the doctrine of respondeat superior should not protect Wal-Mart. She also makes just one assertion, again without citation to authority or the record, that a question of fact remains on this issue. Arguments inadequately briefed in the opening brief are waived, see Fed. R.App. P. 28(a)(6); Coleman v. B-G Maintenance Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir.1997); United States v. Callwood, 66 F.3d 1110, 1115 n. 6 (10th Cir.1995); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir.1995), and bald assertions in briefs that there are genuine issues of material fact are insufficient to merit reversal of summary judgment. See Fed.R.Civ.P. 56(e); Thomas, 968 F.2d at 1024.
AFFIRMED.

. The dissent criticizes us for expecting Plaintiff to carry her shifted burden on summary judgment in her own motion materials. See Dissent at 679-680. The dissent's criticism ignores the burden-shifting analysis we are to apply when judging summary judgment motions. Rule 56(e) and Celotex direct us to focus on the nonmovant’s submission once the movant has met its prima facie burden of production. See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548. The natural consequence of this shifted burden of production to the nonmovant is, of course, that the nonmovant must produce.
"The dissent’s apparent misunderstanding of these burdens ‘has an obvious and critical impact on its assessment of this record.’ ” Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 n. 2 (10th Cir.1992). Aside from the dissent's purely legal argument for a stricter test of employers’ responses to harassment, which we address below, the dissent's factual arguments fail because they depend upon this improper assessment 'of the record. See Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir.1997) ("We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury.”); Langley v. Adams County, 987 F.2d 1473, 1476 (10th Cir.1993); Williams v. *672 Rice, 983 F.2d 177, 179 (10th Cir.1993); Mares, 971 F.2d at 494; Thomas, 968 F.2d at 1024-25.

. The dissent suggests that the statements in Plaintiffs verified complaint are not conclusory because they have "the same force and effect as an affidavit.” Dissent at 680 n. 2. Regardless of their form, the statements remain conclusory.

. This EEOC guideline slates:
With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.
29 C.F.R. § 1604.11(d) (1997).

. Respecting our statement as to why Mr. Clauser verbally coached Plaintiff, the dissent charges us with neglecting the relevant standard of review as well as unspecified contrary evidence cited to the district court,. See Dissent at 682-683. Mr. Clauser testified that he coached Plaintiff because (1) "she had told one of the mechanics he had a ‘cute butt,' ” (2) "[s]he had told another associate that she wasn’t wearing panties or she didn’t wear panties,” (3) she commented apparently when choking on some food, "I haven’t learned to suck and swallow yet,” and (4) she made comments "about fabricating a false sexual harassment claim against her manager.” II. R. 490-93, cited in Memorandum Brief in Support of Defendant’s Motion for Summary Judgment, I R. 31. Plaintiff referenced no evidence in contravention of these bases for her verbal coaching.
We do not perceive the significance, as the dissent does, of whether Plaintiff's comments about false harassment charges were in jest, as we think it within the employer’s discretion to verbally coach Plaintiff for discussing matters that are inappropriate even as material for humor. See Dissent at 683.

. According to the dissent, whether Mr. Medina was the actual harasser is an issue for the trier of fact. See Dissent at 683. In light of Mr. Medina’s denial. Plaintiff's failure to recall the actual harasser’s name, and the lack of any witness, no evidence from which a reasonable jury could have inferred Mr. Medina was the actual harasser was adduced. Genuine issues of fact must be supported by more than a mere scintilla of evidence. See Anderson, 477 U.S. at 252, 106 S.Ct. 2505; Black v. Baker Oil Tools, Inc., 107 F.3d 1457, 1460 (10th Cir.1997).

. The dissent cites Harris v. Forklift Sys., Inc., 510 U.S. 17, 20-23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1002 (10th Cir.1996), for the proposition that the focus should be on whether there were recurrent incidents of harassment, rather than on effectiveness in stopping the disciplined harasser. See Dissent at 684-685. Neither authority supports the stated proposition. The cited discussion in Hams rejects psychological injury as an essential element of a Title VII claim. See Harris, 510 U.S. at 20-23, 114 S.Ct. 367. The Winsor court does find the employer’s remedial action plainly ineffective based on continuing harassment, but this was continuing harassment by previously complained-of harassers, which the employer did not reprimand or discipline in any way. See Winsor, 79 F.3d at 1002. Significantly, the Winsor court cites Hirschfeld for comparison, noting parenthetically that in that case the employer’s discipline "of offender " was expeditious and effective. Winsor, 79 F.3d at 1002 (citing Hirschfeld, 916 F.2d at 578 & n. 6.) (emphasis added).