### Tony A. WHEELER, Plaintiff,

v.

### FDL, INC. and Numark Industries Co., Inc., Defendants.

### No. CIV.A. 02–2444–CM.

United States District Court, D. Kansas.

Oct. 25, 2004.

Daniel J. Strausbaugh, Strausbaugh & Tongier, LLC, Overland Park, KS, David L. Blunt, B. Buzz Deitchman, P.C., Dallas, TX, George E. Mallon, George E. Mallon, P.A., Kansas City, KS, for Plaintiff.

David R. Buchanan, Brown & James, PC, Kansas City, MO, Michael R. O'Neal, Gilliland & Hayes, P.A., Mitchell W. Rice, Bretz Law Offices, Hutchinson, KS, Anthony M. Singer, Gilliland & Hayes, P.A., Wichita, KS, for Defendants.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

Plaintiff Tony Wheeler filed his original complaint against defendant FDL, Inc. (FDL), on September 17, 2002. Plaintiff filed a first amended complaint on December 6, 2002, adding Numark Industries, Co., Inc. (Numark) as a defendant. Plaintiff's cause of action arises out of an alleged fall from an executive chair on December 7, 2000. Plaintiff alleges that the executive chair from which he fell was defective and unreasonably dangerous, and that defendants were negligent in manufacturing and distributing the chair. This matter comes before the court on FDL's Motion for Summary Judgment (Doc. 104).

### I.  Facts [1]

As a preliminary matter, the court notes that plaintiff's response brief fails to ade-

---

1. The court notes that it construes the facts in   the light most favorable to plaintiff as the

quately respond to, much less controvert, FDL's statement of facts. Plaintiff summarily denies several paragraphs of FDL's statement of facts without citing to any evidentiary support, and then proceeds to state his own facts. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiff has failed to comply with these requirements. Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the court considers those facts uncontroverted pursuant to Fed. R.Civ.P. 56. However, the court will deem FDL's facts controverted to the extent that plaintiff's own facts fairly meet the substance of FDL's statement of facts and are supported by competent evidence.

In 1997, FDL purchased certain quantities of chairs from Numark and distributed these chairs to Sam's Club and Office Max.[2] Throughout 1997, FDL's major distribution point was in Alexandria, Indiana. All shipments of chairs purchased by FDL from Numark were sent directly from China to the distribution point in Indiana. Each shipment of chairs from Numark to FDL's distribution point in Indiana contained 300—400 chairs that were individually boxed. Once a shipment of Numark chairs arrived, employee(s) of FDL would open 1—2% of the boxes to make sure all the parts for that individual chair were present. The FDL employees at the Indiana distribution point did not inspect any of the chairs for welding defects. The FDL employees at the Indiana distribution point had no training, knowledge or experience in welding mechanics and had no training, knowledge or experience in identifying welding defects. The various Sam's Club and Office Max retailers throughout the United States who purchased these Numark chairs took possession of these chairs directly from the FDL distribution point in Indiana.

Plaintiff purchased two identical executive chairs at Sam's Club on February 26, 1998. Plaintiff alleges that he was injured on December 7, 2000, while he was at work, when the welding on the pedestal of his executive chair broke, causing him to fall to the ground and injuring his back. After the accident involving plaintiff, FDL sent parts to replace the part of the chair that had broken.

Plaintiff alleges the chair was manufactured, sold or distributed by either FDL or Numark or both. In fact, FDL did not manufacture the chair or any of the chair components. Numark is the manufacturer of the chair.

Plaintiff alleges that the chair was defective and unreasonably dangerous in that:

a. The weld was not sufficiently strong to hold a person rightfully using the chair;

b. The chair was not equipped with a safety device to prevent the chair from collapsing;

c. The chair was not properly supplied with adequate warnings, notices and instructions to inform users that the weld could break and cause the user to fall; and

d. The base plate was defective in its design rendering it unreasonably dangerous when placed in the stream of commerce.

Gary Marquart, one of plaintiff's co-workers, had a chair of the same style as plaintiff. The pedestal on Marquart's

---

non-moving party pursuant to Federal Rule of Civil Procedure 56.

**2.** FDL did not purchase any chairs from Numark in 1998 or 1999.

chair broke when a weld on his chair failed. This occurred shortly after Marquart acquired the chair in October 2000. Following the incident, Marquart called FDL and informed an FDL employee of the incident and model number of the chair involved. On December 3, 2000, FDL shipped three replacement seat plates to Mark Hemphill at plaintiff and Marquart's office.[3] Marquart's chair both broke and was repaired before the incident involving Wheeler's chair.

FDL has submitted affidavits from one of its company officers, Bob Gray, and one of its engineers, Frank Ritchie, stating that it had no knowledge of any alleged defect(s) in the chair prior to its sale to plaintiff on February 26, 1998. The affidavits also state that no claims for personal injury relating to use of the model of chair that is the subject of this lawsuit were presented to FDL prior to February 26, 1998, and that FDL was not presented with any allegations of faulty or defective welding associated with the model of chair that is the subject of this suit prior to February 26, 1998. The affidavits further state that FDL could not have discovered the alleged defect(s) in the chair while exercising reasonable care in the performance of its duties or any of its duties it was required to perform in distributing the model of chair that is the subject of this lawsuit.

Gray also identified three claims involving allegations of chairs either falling or breaking. All of these claims involve the same model of chair as the chair that is the subject of this lawsuit. Two of the claims involved failure of a seat plate weld; Gray was uncertain of the defect alleged in the third case. The claims involving failure of a seat plate weld arose out of incidents that took place on March 19, 1998, March 3, 2000, and October 2000 (Marquart's claim).

Numark is subject to service of process under the laws of the state of Kansas and is a party to this lawsuit. Numark had a liability insurance policy in effect with American Safety Indemnity Company (ASIC) for the period beginning August 28, 2000, through August 28, 2001, with an applicable limit of $1 million. Numark also had an excess liability insurance policy in effect with Royal Insurance Company of America (RICA) for the period beginning August 28, 2000, through August 28, 2001, with an applicable limit of $9 million.

Plaintiff alleges $105,000.00 in past medical bills and $951,077.00 in total economic loss.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

---

**3.** FDL keeps a supply of seat plates on hand, and has employees who respond to customer calls for replacement seat plates. In 1998 or 1999, FDL decided to use seat plates manufactured by a company named Tung Yu as replacement parts.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Liability Under the KPLA

FDL contends that, as a seller of the chair that is the subject of this lawsuit, it is not subject to liability pursuant to the Kansas Product Liability Act (KPLA).

The KPLA defines a "product seller" as any entity that is in the business of selling products whether for use or consumption, or for resale. Kan. Stat. Ann. § 60–3302(a). FDL, as a distributor of the chairs to various retailers for re-sale, is a "product seller" within the meaning of the KPLA.

A "product liability claim" under the KPLA includes any action brought for harm caused by (among other things) design, production, testing, or warning concerning a relevant product. *See id.* § 60–3302(c). Such term specifically includes "any action based upon strict liability in tort, negligence, breach of express or implied warranty, ... [and] failure to, discharge a duty to warn." *Id.*

Under the KPLA, a product seller is not liable for a product liability claim, such as those asserted by the plaintiff, if the product seller establishes five facts:

(a) The seller had no knowledge of the defect.

(b) The seller could not have discovered the defect in the exercise of reasonable care in performing its duties.

(c) The seller was not a manufacturer of the product or product component.

(d) The manufacturer of the product is subject to service of process under Kansas law.

(e) A potential judgment against the manufacturer is reasonably certain of being satisfied.

*See id.* § 60–3306.

### B. Whether FDL Is An Innocent Seller Entitled to Immunity from Liability

FDL contends that all elements of the innocent seller statute have been met, and that it is thus immune from liability for plaintiff's claims. Plaintiff claims that genuine issues of material fact exist with

regard to the first, second, and fifth requirements of Kan. Stat. Ann. § 60–3306 that preclude summary judgment in FDL's favor.

There is no dispute with regard to the third and fourth requirements of the statute. Numark, not FDL, is the manufacturer of the product at issue, and Numark is subject to service of process under Kansas law and is a defendant in this case. The court thus turns to analysis of the three requirements at issue.

**1. FDL's Knowledge of the Defect**

■ Plaintiff contends that, because FDL was aware of the incidents involving failure of seat plate welds that occurred on March 19, 1998, March 3, 2000, and in October 2000, and because FDL kept a supply of seat plate replacements on hand, FDL had knowledge of the defect to the chair prior to plaintiff's accident in December 2000 and therefore was not an innocent seller. However, the determination of whether a seller of a product had knowledge of an alleged defect is not based on knowledge by the seller at the time of the alleged incident, but rather on knowledge at the time of the sale. *McHenry ex rel. McHenry v. Sears, Roebuck & Co.*, 2000 WL 1472742, at *4 (D.Kan. Aug.3, 2000). It is uncontroverted that FDL had not been presented with any claims for personal injury relating to the model of chair at issue prior to the date that plaintiff purchased the chair—February 26, 1998. Moreover, Gray's and Ritchie's affidavits state, and are uncontroverted by plaintiff, that FDL was not aware of any defects in the chair prior to its sale to plaintiff on February 26, 1998. Accordingly, the first requirement of § 60–3306 is satisfied.

**2. Discovery of the Defect**

■ Plaintiff next contends that FDL could have discovered the defect in the seat plates while performing its duties as the seller of the chair. Plaintiff argues that the model of chair at issue was within the exclusive control of FDL from the time the chairs enter the United States until they were delivered to retailers for sale from the Indiana distribution facility. Plaintiff also argues that, because FDL employees at the distribution facility in Indiana opened 1–2 % of the individually boxed chairs to determine whether all parts were present, it could have discovered the defect.

FDL asserts, through the Gray and Ritchie affidavits, that FDL could not have discovered the alleged defect(s) in the chair while exercising reasonable care in the performance of its required duties, and that employees at the Indiana distribution point were simply opening 1—2% of the boxes to make sure all of the parts for the individual chairs were present. Those employees did not inspect any of the chairs for welding defects and had no training, knowledge or experience in welding mechanics or in identifying welding defects. Plaintiff points to no facts in the record to demonstrate that FDL's assertions are false. Accordingly, FDL's assertions are uncontroverted, and the second requirement of § 60–3306 is satisfied.

**3. Potential Judgment Against Numark**

■ Finally, plaintiff contends that all that FDL has established with regard to the fifth requirement of § 60–3306 is that Numark has insurance policies which may or may not apply to plaintiff's case, and which may or may not have already been exhausted. Plaintiff argues that FDL has introduced no evidence regarding Numark's financial circumstances or its ability to satisfy a judgment.

FDL contends that ASIC, Numark's primary insurance carrier, is providing Numark's defense in this case. FDL also points out that Numark's primary liability

insurance policy with ASIC covers the period during which the alleged accident occurred, and that Numark, through written discovery, identified its primary liability insurance policy with ASIC, which has a $1 million limit, as an insurance agreement that may be liable to satisfy part or all of any judgment in this action. FDL contends that, based on Numark's response, its primary policy with ASIC has not been exhausted, and thus, the excess policy for $9 million that Numark held with RICA for that time period is also available to satisfy a judgment.

Plaintiff has alleged $105,000.00 in past medical bills and $951,077.00 in total economic loss. Based on the record before the court, it appears Numark has insurance coverage of at least $1 million, and potentially $9 million, that could satisfy a judgment on plaintiff's claims. Plaintiff points to no facts in the record to controvert FDL's assertions or Numark's own statements about the extent of Numark's insurance coverage available to satisfy a judgment on plaintiff's claims. Accordingly, the fifth requirement of § 60–3306 is satisfied.

**IT IS THEREFORE ORDERED** that FDL, Inc.'s Motion for Summary Judgment (Doc. 104) is granted. Accordingly, plaintiff's claims against FDL, Inc. are dismissed.