**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRIS HOGAN,

     Plaintiff - Appellant,

v.

UTAH TELECOMMUNICATIONS
OPEN INFRASTRUCTURE AGENCY;
TODD MARRIOTT, Executive Director of
Utah Telecommunication Open
Infrastructure Agency,

     Defendants - Appellees.

No. 14-4138
(D.C. No. 1:11-CV-00064-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.
_____

Chris Hogan appeals the dismissal of his wrongful termination in violation of

public policy claim. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

For purposes of this appeal, we accept the allegations in Hogan's complaint as

true and view them in the light most favorable to him. Smith v. United States, 561

F.3d 1090, 1098 (10th Cir. 2009). The Utah Telecommunication Open Infrastructure

Agency ("UTOPIA") is an inter-municipal cooperative entity and a political

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

subdivision of the State of Utah. It was formed by several Utah municipalities to construct a fiber optic network. UTOPIA entered into a contract with Hogan on May 9, 2009, under which he served as an independent contractor for a two-year term. At that time, UTOPIA's Executive Director was Todd Marriott.

Toward the end of Hogan's contract term, UTOPIA issued a request for proposals ("RFP") seeking contractors to build secondary fiber optic lines. The RFP was managed by Jerod Pantier; Hogan was not responsible for the RFP process. In response to the RFP, Tetra Tech—a company which employed Marriott's brother in its upper management—submitted a bid. According to Hogan, Tetra Tech's bid was very close to the undisclosed internal cost projections made by UTOPIA.

UTOPIA initially planned to complete the project in two phases. However, after receiving bids for the first phase, UTOPIA changed course and decided to issue an RFP seeking a contractor to oversee both phases. It withdrew the original RFP and began the process of preparing a second RFP. In this second process, Hogan believed that Corning, Inc. would submit a bid, and that Corning would propose to use Tetra Tech as a subcontractor. Hogan was concerned that if Tetra Tech worked on the project, UTOPIA could be viewed as engaging anticompetitive practices. Acknowledging he could be wrong about his concerns, Hogan nevertheless suggested that Pantier tell UTOPIA's executive board about Marriott's relationship to Tetra Tech. Instead, Pantier informed Marriott of Hogan's accusations. Marriott then terminated Hogan's contract.

Hogan filed suit against UTOPIA and Marriott advancing several claims. On summary judgment, the district court ruled in favor of Hogan on his claims for breach of contract and breach of the covenant of good faith and fair dealing and awarded him $23,000. Hogan v. Utah Telecomm. Open Infrastructure Agency, No. 1:11-CV-64 TS, 2013 WL 1619818, at *6 (D. Utah Apr. 15, 2013) (unpublished). It dismissed his other claims. Id. at *2. We affirmed the district court in all respects save one: we held that Hogan's complaint could permit a factfinder to conclude he was an employee rather than a contractor, and thus remanded Hogan's claim for wrongful termination in violation of public policy. Hogan v. Utah Telecomm. Open Infrastructure Agency, 566 F. App'x 636, 640, 642 (10th Cir. 2014) (unpublished). On remand, the district court concluded that Hogan failed to state a claim under Fed. R. Civ. P. 12(b)(6) because he did not point to a cognizable public policy to support relief for wrongful termination and because Utah's Governmental Immunity Act bars his claim. Because we agree with the district court that Hogan failed to state a claim, we do not reach the question of immunity.

## II

We review the district court's Rule 12(b)(6) dismissal de novo. Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010). To prevail on a claim for wrongful discharge in violation of public policy in Utah, Hogan must show that his conduct brought a clear and substantial public policy into play. Touchard v. La-Z-Boy Inc., 148 P.3d 945, 955 (Utah 2006). Although "[c]ourts often use the term public policy as a broad reference to anything that has a tendency to be injurious to the public, or

-3-

against the public good," for purposes of this tort claim, cognizable public policies are "much narrower than traditional notions of public policy." Pang v. Int'l Document Servs., 356 P.3d 1190, 1197 (Utah 2015) (quotations omitted). To survive a Rule 12(b)(6) motion, Hogan's "complaint must identify a public policy so clear and weighty, and as to which the public interest is so strong that the policy should be placed beyond the reach of contract." Id. (quotations and alterations omitted). To determine whether an asserted policy is sufficient, Utah courts consider:

> (1) whether the policy at issue is reflected in authoritative sources of state public policy [such as legislative enactments, constitutional standards, or judicial decisions], (2) whether the policy affects the public generally as opposed to the private interests of the employee and employer, and (3) whether countervailing policies outweigh the policy at issue.

Id. (footnotes omitted).

Hogan argues that three public policies are at issue. First, he contends that UTOPIA violated Utah's public policy of allowing employees to express concerns about potentially illegal employer conduct. But Hogan fails to identify any authority that would make the alleged conduct by UTOPIA illegal. Hogan points generally to the Utah Procurement Code ("UPC"), but does not explain how UTOPIA violated or might violate the UPC. And in any event, the UPC expressly exempts interlocal cooperative entities like UTOPIA from its provisions. See Utah Code § 63G-6a-104(15)(b) (exempting "political subdivision[s] created under Title 11, Chapter 13, Interlocal Cooperation Act"). This factor distinguishes this case from Heslop v. Bank of Utah, 839 P.2d 828 (Utah 1992), in which the Utah Supreme Court

-4-

recognized a wrongful discharge claim premised on the employee's insistence that his employer adhere to a particular provision of the Utah Financial Institutions Act that governed the employer's conduct. Id. at 837-38. In essence, Hogan argues that public policy requires UTOPIA to comply with a statute from which it is expressly exempted. Utah precedent bars such an approach. See Burton v. Exam Ctr. Indus. & Gen. Med. Clinic, Inc., 994 P.2d 1261, 1266 (Utah 2000) (rejecting a wrongful discharge in violation of public policy claim premised on a statute containing an exception for defendant employer).

Hogan's second asserted policy—encouraging good faith and fair dealing in contracts—fails for two reasons. Hogan does not mention this public policy in his opening brief and thus it is waived. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Further, the Utah Supreme Court has explained that "[t]he covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest" and thus "[t]he very nature of the public policy exception . . . distinguishes it from the implied covenant of good faith and fair dealing." Peterson v. Browning, 832 P.2d 1280, 1284 (Utah 1992) (quotation omitted).

Finally, Hogan argues that he was terminated for performing his "public obligation" to ensure that UTOPIA complies with its legal duties. Although Utah courts have recognized a public policy against "discharging an employee for performing a public obligation," Touchard, 148 P.3d at 948 (quotation omitted), the

term refers to activities "such as jury duty," <u>Hansen v. Am. Online, Inc.</u>, 96 P.3d 950, 952 (Utah 2004). Hogan's conduct did not involve a legally required duty owed to the public like jury duty; and he does not identify any action he was obligated to perform.[1]

Because Hogan has not identified any public policy to support relief, we agree with the district court that he has failed to state a claim.[2]

### III

For the foregoing reasons, we **AFFIRM**. We **DENY** Hogan's motion to certify.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[1] Hogan suggests in his reply brief that his public obligation is rooted in a Utah Constitutional provision which states that "[i]t is the policy of the state of Utah that a free market system shall govern trade and commerce" and that "[e]ach contract . . . or conspiracy in restraint of trade or commerce is prohibited." Utah Const. art. XII § 20. Because Hogan did not advance this argument in his opening brief, it is waived. <u>Adler</u>, 144 F.3d at 679.

[2] For the same reasons that Hogan fails to state a claim against UTOPIA, we hold that he fails to state a claim against Marriott. We thus do not reach the question of whether Hogan properly preserved his claim against Marriott. Nor do we reach the question of whether the Utah Governmental Immunity Act grants UTOPIA immunity against a claim for wrongful termination in violation of public policy.