**Artie LOVEALL, Plaintiff,**

v.

**EMPLOYER HEALTH SERVICES, INC., et al., Defendants.**

No. 99–2207–JWL.

United States District Court, D. Kansas.

June 16, 2000.

---

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Presently before the court is defendant Bi-State Medical Company of Kansas' ("Bi-State") motion for summary judgment (doc. 45). For the reasons set forth below, defendant's motion is denied.

### I. Background

On May 11, 1999, plaintiff Artie Loveall filed this personal injury action against defendants Employer Health Services, Inc., Health Midwest, Square One Rehab, Inc., Maxwell/Healthcare, Inc., and Staffmark, Inc., claiming damages allegedly sustained during a physical therapy session he attended on October 22, 1997. According to the facts set forth in his complaint, at the beginning of plaintiff's treatment, the physical therapist to which Mr. Loveall was assigned attached a machine via electrodes to Mr. Loveall's lower back and then left the room. When the physical therapist returned at the conclusion of plaintiff's therapy session, plaintiff was in pain; once plaintiff arrived home, he discovered that blisters had formed on his lower back in the areas where the electrodes had been attached. Mr. Loveall was later diagnosed as having suffered third degree burns at the electrode attachment points.

On October 19, 1999, plaintiff filed his First Amended Complaint ("amended complaint") (doc. 10), asserting strict products liability claims and adding defendants National Medical Alliance, Inc., Williams

Healthcare Systems, L.L.C., and Standex International Corporation. According to plaintiff, National Medical was believed to be the party against which his products liability claims arising from an alleged defect in the electrodes were properly assertable because National Medical's name appeared on a package insert accompanying sample electrodes produced during discovery.

Neither the original nor the amended complaint identified Bi–State as a defendant to this action. However, plaintiff later determined that National Medical was an improper party to his strict products liability claims. As a result, on February 11, 2000, plaintiff filed his Second Amended Complaint (doc. 38), in which he asserted strict products liability claims against Bi–State, Uni–Patch, Inc., and Axelgaard Manufacturing Co., Ltd. On February 21, 2000, Bi–State received a copy of plaintiff's second amended complaint.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

Defendant Bi–State claims that it is entitled to summary judgment as a matter of law because plaintiff's claims against Bi–State are barred by the applicable statute of limitations. The sole issue raised by defendant's motion for summary judgment is whether the January 6, 2000 letter sent by then-defendant National Medical to Bi–State constitutes sufficient notice under Fed. R. Civ. Pro. 15(c) such that plaintiff's claims against Bi–State as set forth in his second amended complaint relate back to the earlier filing date of either the first amended complaint ·or the original complaint, both of which were filed prior to the expiration of the statute of limitations.

Neither party disputes that the two-year statute of limitations provided by K.S.A. § 60–513(a)(4) governs plaintiff's products li-

ability claim against Bi–State.[1] Thus, and as is further undisputed by the parties, the statute of limitations on plaintiff's claims expired on October 22, 1999, two years after the injury on which his claims are predicated accrued. Consequently, because plaintiff's second amended complaint was not filed until February 11, 2000, plaintiff's claims against Bi–State are time-barred unless the second amended complaint relates back to the filing of his earlier pleadings.

## A. Rule 15(c)(3) [2]

■ Where, as here, an amendment seeks to change the party being sued, the amended pleading will relate back to the date of the earlier filings only if all of the conditions set forth in Fed.R.Civ.P. 15(c)(3) are met. First, the claim must arise from the same "conduct, transaction, or occurrence" as alleged in the original complaint. *See* Fed.R.Civ.P. 15(c)(2)–(3). Bi–State does not dispute that this condition is met in this case. Second, the proposed new party must have received "such notice" of the suit that he or she "will not be prejudiced in maintaining a defense on the merits." *Id.* Third, the amendment will not relate back unless the proposed new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been

brought against the party." *Id.* Finally, the second and third requirements must have been fulfilled within the period of service of process prescribed by Fed.R.Civ.P. 4(m). *Id.*

The parties differ as to whether the remaining requirements of Rule 15(c)(3), i.e., whether Bi–State received notice of plaintiff's claims against it, whether Bi–State knew or should have known that, but for a mistake as to its identity, plaintiff would have filed the action against Bi–State, and whether such notice and knowledge were accomplished in a timely manner, were satisfied here. Specifically, plaintiff contends that National Medical's January 6, 2000 letter to Bi–State, received eighty-three days after the amended complaint was filed, in which National Medical informed Bi–State of the pendency of this action and the possibility that, in counsel for National Medical's view, Bi–State would likely find itself drawn into the lawsuit, was sufficient to place Bi–State on notice of the institution of an action against it such that Bi–State would "not be prejudiced in maintaining a defense on the merits." Fed. R.Civ.P. 15(c)(3)(A). Plaintiff further contends that, but for his mistake in identifying National Medical as the proper party to this action, Bi–State would have been named in

---

1. K.S.A. § 60–513 provides, in pertinent part:

   (a) The following actions shall be brought within two years: ... (4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.
   K.S.A. § 60–513(a)(4).

2. The parties appear to disagree as to whether Fed.R.Civ.P. 15(c) governs here, or whether, because this is a diversity action, K.S.A. § 60–215(c), the state rule governing amendments to pleadings, applies. The only substantive difference asserted by defendant to exist between the federal and state provisions is the different time limitations provided in the federal and state amendment rules: whereas Fed.R.Civ.P. 15(c)(3) provides that its requirements must be fulfilled within 120 days, K.S.A. § 60–215(c)(2) allows only ninety days. Citing *Habermehl v. Potter,* 153 F.3d 1137 (10th Cir.1998), defendant claims that the ninety-day time limitation provided under K.S.A. § 60–215(c) governs here. *See id.* at 1139 (in diversity action, for service of process purposes, the shorter, sixty-day time period set forth in state rule, as opposed to 120 day period set forth in Fed.R.Civ.P. 4(m) applies; thus, because plaintiff's complaint was not served until 106

days after limitations period expired, action was time-barred).

The court concludes that a determination of the issue is unnecessary to the resolution of Bi–State's motion because the result would be the same under both federal and state law. Indeed, because the letter asserted by plaintiff as constituting notice of the action was received on January 10, 2000, eighty-three days after the filing of the amended complaint, if the letter from National Medical to Bi–State is deemed by the court to constitute sufficient notice of the action, the amendment will relate back to the earlier filing date regardless of whether the ninety day limitations period set forth in K.S.A. § 60–215(c) or the 120 day limitations period provided for in Fed.R.Civ.P. 15(c) is applied. *See, e.g., Anderson v. United Cab Co.,* 8 Kan.App.2d 694, 696, 666 P.2d 735, 737 (1983)(where "an amendment is sought to change the name of a defendant, the phrase 'period provided by law for commencing the action,' as used in K.S.A. 60–215(c), includes both the time set out in the applicable statute of limitations and the 90–day period allowed for effective service of process to relate back to the date of the petition.")

the amended complaint. *See* Fed.R.Civ.P. 15(c)(3)(B). The court addresses each argument in turn.

### B. Notice

■ Plaintiff claims that Bi–State's receipt of the letter dated January 6, 2000 from National Medical constituted sufficient notice of this action, and thus that Rule 15(c)(3)(A)'s notice requirement is satisfied here. In contrast, Bi–State claims that the January 6, 2000 letter does not, as a matter of law, suffice as notice for purposes of Rule 15(c)(3)(A). Instead, Bi–State maintains that the first time it received notice of the institution of the action was on February 21, 2000, the date it received plaintiff's second amended complaint, which undisputably falls well outside the provisions of Rule 15(c)(3).

■ By its terms, the text of Rule 15(c)(3) does not require actual service upon a putative defendant in order for the "notice" requirement to be satisfied, nor does the rule require that the notice issue directly from the plaintiff. *See* Fed.R.Civ.P. 15(c)(3); *Montgomery v. United States Postal Serv.,* 867 F.2d 900, 903 (5th Cir.1989)("it is notice and not service that Rule 15(c) requires"). Indeed, the Advisory Committee's Note to the 1966 amendment of 15(c) explains that "notice" as contemplated by the rule "need not be formal." Adv. Comm. Note. to 1966 Amendment; *see generally* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1498 (2d ed.1990). Rather, the text of the rule merely provides that the notice must be such that "the party will not be prejudiced in maintaining a defense on the merits." Fed.R.Civ.P. 15(c)(3)(A).

National Medical's letter undeniably alerted Bi–State not only to the pendency of this action, but also to the possibility that Bi–State would likely find itself drawn into the action at some point. *See* Letter Dated Jan. 6, 2000 ("Accordingly, because of the involvement of [Bi–State] with the sale, manufacture and production of the Gentle Stim electrodes, I anticipate that [Bi–State] will be named as an additional party in this lawsuit.") Furthermore, the implicit purpose of Rule 15(c)(3)(A)'s notice requirement was satisfied

here: indeed, nothing in the record before the court indicates that Bi–State's ability to prepare or maintain a defense against plaintiff's claims was in any way compromised by the means in which it was made aware of this litigation. Finally, because the January 6, 2000 letter was received by William R. Bradley in his capacity as President of Bi–State on January 10, 2000, eighty-three days after the amended complaint was filed in this action, Bi–State received the notice within the prescribed limitations period. Thus, the court concludes that, under the facts of this case, Rule 15(c)(3)(A)'s notice requirement was fulfilled by the January 6, 2000 letter from then-defendant National Medical to Bi–State.

### C. Mistake

Bi–State argues that the claims asserted against it in plaintiff's second amended complaint do not "relate back" to the date of the original pleading for the additional reason that plaintiff's failure to name Bi–State as a defendant in the amended complaint was not a "mistake" within the meaning of Rule 15(c)(3)(B). Because the court believes that plaintiff's failure to name Bi–State as a defendant to this action in his amended complaint resulted from plaintiff's mistaken belief that he had asserted his claims against the proper party, the court disagrees with Bi–State on that score as well.

■ Bi–State is correct in its assertion that, with full knowledge of all potential defendants, a plaintiff's tactical decision to pursue a particular defendant in lieu of another does not constitute a "mistake" within the meaning of Rule 15(c)(3)(B). *See, e.g., Maycher v. Muskogee Medical Ctr. Auxiliary,* 129 F.3d 131 (table), 1997 WL 698007, *2 (10th Cir. Nov.6, 1997)(citing *Rendall–Speranza v. Nassim,* 107 F.3d 913, 917–19 (D.C.Cir.1997); *Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994)). Here, however, nothing in the record indicates that plaintiff's failure to name Bi–State as a defendant in his amended complaint was the product of a deliberate or otherwise strategic choice to bring suit against National Medical instead of Bi–State. Indeed, there is no evidence to suggest that, fully cognizant of Bi–State's

potential involvement in the sale, manufacture or distribution of the allegedly defective electrodes, plaintiff chose to sue National Medical instead. Rather, it appears that plaintiff was merely mistaken in his belief that National Medical was the seller, distributor and/or manufacturer of the electrodes, and as a result misidentified National Medical as the proper party against which his product liability claims were assertable.

█ Moreover, this case is clearly distinguishable from *Henry v. FDIC*, 168 F.R.D. 55, 59–60 (D.Kan.1996), cited by defendant in support of its motion. Indeed, unlike *Henry*, this is not a so-called "John Doe defendant" case where the plaintiff has initiated an action against an unknown defendant only to later identify that party after the limitations period has expired. Instead, it is clear from his pleadings that, while plaintiff intended to sue the seller, manufacturer, or distributor of the allegedly defective electrodes, he simply misidentified National Medical as the entity potentially responsible for the damages arising therefrom. *See Maycher*, 129 F.3d 131 (table), 1997 WL 698007 at *2 ("Rather, plaintiff intended from the outset to sue her employer; she just mistakenly misnamed that entity in her complaint.")

Additionally, the court notes that, included with National Medical's January 6, 2000 letter to Bi–State was a copy of plaintiff's amended complaint. From the allegations set forth therein, it is clear that plaintiff believed that National Medical "invented, designed, acquired, tested, assembled, manufactured, marketed, sold and distributed" the allegedly defective electrodes, *see* Amend. Compl. at 9, ¶ 9, and was thus the party against which plaintiff's products liability claims were cognizable. It is undisputed that plaintiff's assertions regarding National

Medical were erroneous. Based on the record currently before it, the court believes that the "mistake" requirement of Rule 15(c)(3)(B) has been satisfied here because Bi–State knew or should have known that, but for Mr. Loveall's mistaken belief that National Medical was the proper party to his strict liability claims, Bi–State would have been named as a defendant in this action.

In short, the court concludes that Bi–State's receipt of the January 6, 2000 letter from National Medical, especially when coupled with its simultaneous receipt of a copy of the amended complaint from which it is clear that plaintiff mistakenly believed National Medical was the seller, distributor and/or manufacturer of the electrodes allegedly responsible for his injuries, constitutes sufficient notice under Rule 15(c)(3).[3] Bi–State's motion for summary judgment is, therefore, denied.

---

3. The court also finds that relation back would be appropriate under K.S.A. § 60–215(c), the Kansas counterpart to Fed.R.Civ.P. 15(c). As noted by the Kansas Supreme Court, "federal decisional law construing Federal Rule No. 15(c)... is authoritative in construing 60–215(c)...." *Marr v. Geiger Ready–Mix Co.*, 209 Kan. 40, 46, 495 P.2d 1399, 1404 (1972). Thus, as is true of Fed.R.Civ.P. 15(c), because K.S.A. § 60–215(c)'s notice requirement does not require formal notice for an amendment to relate back to the original pleading, there is no indica-

tion that the result would be any different under Kansas law. *See Fennesy v. LBI Management, Inc.*, 18 Kan.App.2d 61, 67, 847 P.2d 1350, 1355–56 (1993)("60–215(c) refers to notice, not valid service of process.... Informal notice is sufficient under Federal Rule No. 15(c), as amended, to bring into operation the relation back of the amendment. The rule is the same under 60–215(c), as amended, in the Kansas Code of Civil Procedure.") (internal quotation omitted).